DR. GWEN O'BRYAN, ADMINISTRATOR OF THE DIVISION OF MENTAL HYGIENE AND MENTAL RETARDATION OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NEVADA, AND THE DIVISION OF MENTAL HYGIENE AND MENTAL RETARDATION OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NEVADA, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, DEPARTMENT XI; AND THE HONORABLE ADDELIAR D. GUY, JUDGE THEREOF, RESPONDENTS.

No. 11201

May 16, 1979                                     594 P.2d 739

*Richard Bryan,* Attorney General, and *Emmagene Sansing,* Deputy Attorney General, Carson City, for Petitioners.

*Thomas W. Biggar,* Las Vegas, for Respondents.

## OPINION

By the Court, BATJER, J.:

. The minor (the Juvenile) here involved is a 16 year old female who exhibits antisocial and destructive behavior; is subject to severe depression; and has a history of illegal drug use. Some of her depressions have resulted in her cutting her skin until she draws blood. Her psychiatric diagnosis is "adjustment reaction of adolescence associated with depression". On February 23, 1978, she was declared to be a neglected child, made a ward of the juvenile court, pursuant to NRS 62.040(1)(a), and ordered placed in the Las Vegas Comprehensive Mental Health Center until she reached the statutory age. Subsequently, she was ordered placed in the Nevada Mental Health Institute in Sparks, Nevada. These institutions were unable to beneficially treat her because she continually ran away.

On September 28, 1978, a hearing was held in juvenile court to determine the future course of treatment for the Juvenile. At the outset of the hearing, the district judge indicated that he was predisposed to place her in the Ingleside Mental Health Center in Rosemead, California.[1] Dr. O'Bryan testified that she believed the Juvenile should remain in Nevada because (1)

---

[1]This California facility was one of five institutions recommended by psychiatrists employed by the petitioners. The other four facilities were: (1) Good Shepard Home, Las Vegas; (2) Caliente School for Girls; (3) Reno Mental Health Center; and (4) Las Vegas Mental Health Center.

even if she was placed in California, there was nothing to prevent her from again running away, therefore, it was better to leave her in Nevada where the authorities were familiar with her problems; (2) the long-term forced confinement envisioned by the district judge could be counterproductive; and (3) adequate facilities for treatment of her problems exist in Nevada. Even though Dr. O'Bryan opposed the placing of the Juvenile in a facility outside of Nevada, the district court ordered (1) her placed in the custody of the Administrator of the Division of Mental Hygiene and Mental Retardation (2) for placement at the Rosemead, California, facility (3) with cost of such treatment to be paid by the Division. Petitioners argue that the juvenile court had no authority to make such an order. We agree.

This case is distinguishable from In re Two Minor Children v. Second Judicial District Court, 95 Nev. 225, 592 P.2d 166 (1979), because there the district court directly placed the custody of the minor children in the out-of-state facility and the only duty that was left to the Administrator of the Division was to transport the minors to the facility. *See* NRS 62.300[2]. Here, on the other hand, the custody of the Juvenile was "given" to the Administrator. After imposing that responsibility upon the Administrator, the district judge then ordered the Juvenile to be placed at the Rosemead facility.

Although the juvenile division of the district court possesses independent authority to directly place minors in an out-of-state facility, NRS 62.040; NRS 62.240; NRS 62.200(1)(c), once the court grants custody of the child to the Division, the court loses jurisdiction to substitute its determinations, appraisals and conclusions for those of the Division. In Galloway v. Truesdall, 83 Nev. 13, 31, 422 P.2d 237, 249 (Nev. 1967), this Court said:

> The courts must be wary not to tread upon the prerogatives of other departments of government or to assume or utilize any undue powers. If this is not done, the balance of powers will be disturbed and that cannot be tolerated for the strength of our system of government and the judiciary itself is based upon that theory.

*Cf.* Jones v Beame, 380 N.E.2d 277 (N.Y. 1978); Blaney v. Commissioner of Correction, 372 N.E.2d 770 (Mass. 1978).

---

[2]NRS 62.300 provides:

"It is hereby made the duty of every public official and department to render all assistance and cooperation within his or its jurisdictional power which·may further the objects of this chapter."

We do not imply that the Division's action could ever be above judicial review or beyond the scope of the extraordinary writs, NRS ch. 34. Our courts will always possess the authority to set aside decisions of the Division if they are arbitrary or illegal.

As long as custody and disposition remain with the Administrator of the Division, it will be responsible for consequential expenses. If the district court removes custody from the Division and directly places the Juvenile in an out-of-state facility, the cost of such care will be a proper charge against the county of the Juvenile's legal residence. NRS 62.240(2); In re Two Minor Children, *supra*.

The juvenile division of the district court is prohibited from seeking to enforce its order entered on September 28, 1978, in District Court Case No. J16882, Eighth Judicial District Court, Clark County, State of Nevada.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.