THE DIVISION OF CHILD AND FAMILY SERVICES, DEPARTMENT OF HUMAN RESOURCES, STATE OF NEVADA, Petitioner, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK, and THE HONORABLE GERALD W. HARDCASTLE, District Judge, Family Court Division, Respondents, and J.M.R., a Minor, Real Party in Interest.

No. 42211

July 12, 2004                                                92 P.3d 1239

Brian Sandoval, Attorney General, and Brigid J. Duffy, Deputy Attorney General, Carson City, for Petitioner.

Burdman Law Group and Jeffrey P. Kerrane, Las Vegas, for Real Party in Interest.

Before Becker, Agosti and Gibbons, JJ.

## OPINION

*Per Curiam:*

This case involves the temporary placement of a fourteen-year-old foster child in a psychiatric treatment facility. The district court orally ordered petitioner, the Division of Child and Family Services (DCFS), to release the child from the facility. Because the DCFS did not immediately comply with the order, the district court orally held the DCFS in contempt and imposed sanctions. The two issues the DCFS raises in this writ petition are whether the district court had jurisdiction to order the child's release and whether the district court's release order was unclear and ambiguous. We ordered the parties to submit supplemental briefing on the issue of whether an

order of the court that has not been reduced to writing and filed with the court clerk is effective and enforceable.

We conclude that although the district court had jurisdiction to order the child's release, the district court's oral orders had to be written, signed, and filed before they became effective. Dispositional orders that are unrelated to administrative procedure and case management, and that have not been signed and filed, are ineffective and cannot serve as a basis for contempt. Consequently, the district court had no authority to hold the DCFS in contempt for violating its release order, and its contempt order was ineffective.[1] Because we conclude that the district court's oral orders were ineffective, we need not address the DCFS' contention that the district court's contempt order was unclear and ambiguous.

## FACTS

J.M.R., the real party in interest, was born in California to an unmarried couple with substance abuse problems. The child has had no contact with his natural parents since he was eighteen months old. He came into DCFS custody when he was three years old; and since then, he has been to three foster homes and four group homes. On three occasions, the State committed J.M.R. to psychiatric facilities for self-inflicted wounds and violence against others. J.M.R. has a history of being physically and sexually abused and suffers from various mental disorders.

In February 2000, the DCFS placed J.M.R. in a foster home and continued to monitor his development. The DCFS also enrolled J.M.R. in the Reaching Our Community Kids (ROCK) program, an after-school rehabilitation service designed to develop adequate social skills in children. On October 1, 2003, in preparation for a regularly scheduled placement and permanency review, Joyce Mahoney, a DCFS social worker, wrote a report assessing J.M.R.'s progress. Although the report acknowledged J.M.R.'s continuing behavioral problems, it also noted that J.M.R. should remain in his current foster placement.

The district court had scheduled J.M.R.'s permanency review for October 8, 2003. The weekend after Mahoney wrote the progress report, but before the October 8, 2003, hearing, J.M.R. stomped at another child's leg at the ROCK program and exhibited violent behavior toward his foster mother. Mahoney called Dr. Ann Childress, the pediatric physician who had been treating J.M.R. since February 2000, and requested an emergency evaluation. Dr. Childress assessed J.M.R. and recommended that he enter the Spring Mountain psychiatric facility until his behavior stabilized.

---

[1]Nothing in this opinion precludes the court from summarily punishing a party who commits contempt in the court's immediate presence.

At the October 8, 2003, permanency review, the DCFS informed the district court about J.M.R.'s Spring Mountain treatment. Although the DCFS told the court that Dr. Childress made the decision to commit J.M.R., Dr. Childress did not appear at the hearing. The DCFS also failed to present any report regarding Dr. Childress' assessment because Dr. Childress did not prepare such a report until October 10, 2003.

The district court expressed concern that the DCFS acted hastily and opined that although J.M.R.'s behavior was inappropriate, it did not warrant commitment to a psychiatric facility. In open court with the parties present, the court orally ordered the DCFS to remove J.M.R. from Spring Mountain, to assign a social worker to J.M.R.'s case, and to prepare a plan for J.M.R.'s further treatment. The district judge declined to sign a written order, however, so no formal order was entered by the court clerk. When the DCFS inquired whether it should release J.M.R. against medical advice, the district court answered affirmatively. Mahoney stated that the DCFS would release J.M.R. later that same day.

Despite the district court's oral order and Mahoney's representations, the DCFS administration did not release J.M.R. Believing that the release against medical advice would be detrimental to the child, the DCFS sought Dr. Childress' report for further review. The DCFS did not ask the district court to stay the October 8, 2003, order. On October 9, 2003, upon learning of the delay, J.M.R.'s attorney moved for an order to show cause why the district court should not impose sanctions for the DCFS' failure to comply with the oral order to release J.M.R.

On October 13, 2003, the district court held a hearing on the matter. At the hearing, the DCFS explained that it understood the district court's oral order to mean that it should release J.M.R. "as soon as possible," but not "immediately" because the court never used the word "immediately" at the October 8, 2003, hearing. Consequently, the DCFS was reviewing the medical recommendations to determine when J.M.R.'s condition would be sufficiently stable for release. The district court disagreed and stated that it had ordered J.M.R.'s immediate release.

Although the court had read Dr. Childress' report after the October 8, 2003, hearing, the court refused to consider the report. The judge stated that the DCFS should have presented the evidence at the October 8 hearing and that he based his decision on the representations at the time. The court warned the DCFS of possible sanctions and scheduled another hearing for October 20, 2003. The court ordered briefing on the issues of whether there was a valid court order to release J.M.R. and whether the DCFS had proper justification for not following that order.

On October 20, 2003, the court learned that the DCFS still had not released J.M.R. from the facility. The DCFS attempted to dispute the order as ambiguous, but the district court disagreed. Displeased that the DCFS failed to show a justification for the delay other than the medical recommendations,[2] the court orally held the DCFS in contempt. The district judge fined the DCFS $500 per day for every day J.M.R. remained at Spring Mountain, retroactive from the date of the order to show cause. The DCFS requested a stay of the order pending a writ petition to this court, but the district court denied the request and scheduled a compliance hearing for October 24, 2003. On October 22, 2003, we temporarily stayed the contempt order and the October 24, 2003, hearing, pending review of the writ petition's merits.

## DISCUSSION

### Writ relief

A writ of mandamus is an extraordinary remedy that may issue if the petitioner has no plain, speedy and adequate remedy at law.[3] We have absolute discretion whether to consider a mandamus petition.[4] The writ generally serves ''to compel the performance of an act that the law requires as a duty resulting from an office, trust or station, or to control an arbitrary or capricious exercise of discretion.''[5] Even if effective alternative remedies exist, we may entertain a petition for mandamus under urgent circumstances or ''when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition.''[6] A writ of prohibition is the counterpart of a writ of mandamus and is available to arrest ''the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal.''[7]

We do not have jurisdiction to consider an appeal from an order holding a party or a nonparty in contempt because no rule or statute provides for such an appeal.[8] The proper way to challenge

[2]The October 13, 2003, hearing revealed that another foster parent was willing to accept J.M.R.

[3]NRS 34.170; *see also* NRS 34.330 (writ of prohibition).

[4]*State of Nevada v. Dist. Ct. (Ducharm),* 118 Nev. 609, 614, 55 P.3d 420, 423 (2002).

[5]*Id.*

[6]*Id.*

[7]NRS 34.320.

[8]*Pengilly v. Rancho Santa Fe Homeowners,* 116 Nev. 646, 649, 5 P.3d 569, 571 (2000).

a contempt order is through a writ petition.[9] Consequently, this petition appropriately challenges the district court's contempt order.

*Jurisdiction*

Because a finding of jurisdiction is a prerequisite to issuing any valid orders, we will first determine whether the district court had jurisdiction to order J.M.R.'s release. The DCFS argues that the district court had no jurisdiction to issue its release order under NRS Chapter 432B. The DCFS further contends that *O'Bryan v. District Court*[10] precludes the district court's order because there is no evidence that the DCFS acted arbitrarily or capriciously. We conclude that the district court had jurisdiction and discretion to issue its release order.

Pursuant to NRS 432B.560(1)(a), the court may order "[t]he child . . . to undergo such medical, psychiatric, psychological, or other care or treatment as the court considers to be in the best interests of the child." The court must review a child's placement semiannually[11] and examine "[t]he continuing necessity for and appropriateness of the placement."[12]

Allegedly, J.M.R. was in the Spring Mountain facility for treatment purposes, but the court considered this course of treatment inappropriate. The plain language of NRS 432B.560(1)(a) dictates that the district court has the power to decide on appropriate treatment for the child. The power to determine proper treatment includes the power to discontinue the child's present treatment and order a new course of treatment. NRS 432B.580 also provides a jurisdictional basis for the district court's decision because the statute requires the court to assess the appropriateness of the child's placement. While the DCFS did not intend to commit J.M.R. to Spring Mountain indefinitely, J.M.R.'s stay at the facility nevertheless constitutes a "placement." A suggestion that the district court could merely evaluate the placement, but not exercise discretion to change it, would render the court's placement review meaningless. Therefore, both NRS 432B.560(1)(a) and NRS 432B.580 provided the district court with jurisdiction to order J.M.R.'s release.

The DCFS focuses its "lack of jurisdiction" argument on *O'Bryan v. District Court,*[13] which we decided in 1979. Because the Nevada Legislature enacted NRS 432B.560 and NRS 432B.580

---

[9]*Id.*

[10]95 Nev. 386, 594 P.2d 739 (1979).

[11]NRS 432B.580(1).

[12]NRS 432B.580(6)(a).

[13]95 Nev. 386, 594 P.2d 739.

in 1985,[14] the *O'Bryan* holding does not reflect the subsequent legislative enactments. As we stated above, the plain language of both statutes provides a jurisdictional basis for the district court's decision. Sound policy reasons also dictate that the juvenile court should be able to give orders concerning a child's placement or treatment and demand immediate compliance to minimize the impact on the child.

### Validity of oral orders

The DCFS also argues that the district court's oral orders were ineffective. We agree.

While other courts have held that a mandate of the court need not be a formal written order to be effective,[15] some Nevada precedent suggests that an order is not effective until the district court enters it.[16] "Entry" involves the filing of a signed *written* order with the court clerk.[17] Before the court reduces its decision to writing, signs it, and files it with the clerk, the nature of the judicial decision is impermanent.[18] The court remains free to reconsider the decision and issue a different written judgment.[19] Consequently, a ''[c]ourt's oral pronouncement from the bench, the clerk's minute order, and even an unfiled written order are ineffective for *any purpose.*''[20]

*Rust v. Clark County School District*[21] reflects this reasoning. In *Rust,* a school board dismissed a principal for insubordination. Following a hearing, the district court announced its intention to affirm the school board's determination and stated that it would not file a written decision. The principal filed a notice of appeal. Subsequently, the district court entered a written judgment affirming the school board's decision. Although the board served the

---

[14]1985 Nev. Stat., ch. 455, § 55, at 1383; *id.* § 57, at 1384.

[15]17 Am. Jur. 2d *Contempt* § 131, at 488 (2004).

[16]*Tener v. Babcock,* 97 Nev. 369, 370, 632 P.2d 1140, 1140 (1981). *But cf. Dillon v. Dillon,* 67 Nev. 428, 432, 220 P.2d 213, 215 (1950) (''[A] final judgment is rendered when the judgment is orally pronounced by the trial court.'').

[17]NRAP 4(a)(3); *Nevada Civil Procedure Manual* § 11.18, at 11-9 (Continuing Legal Educ. Comm., State Bar of Nevada ed., 5th ed. 2003).

[18]*Canterino v. The Mirage Casino-Hotel,* 118 Nev. 191, 194, 42 P.3d 808, 810 (2002).

[19]*Rust v. Clark Cty. School District,* 103 Nev. 686, 688, 747 P.2d 1380, 1382 (1987).

[20]*Id.* at 689, 747 P.2d at 1382 (emphasis added).

[21]103 Nev. 686, 747 P.2d 1380.

principal with a written notice of the judgment's entry, the principal did not file a new notice of appeal. We concluded that the principal's notice of appeal was premature and thus we lacked jurisdiction to consider the case.[22] We reasoned that "[p]rior to the entry of a final judgment the district court remains free to reconsider and issue a written judgment different from its oral pronouncement."[23] Consequently, we stated that "[a]n oral pronouncement of judgment is not valid for any purpose; therefore, only a written judgment has any effect, and only a written judgment may be appealed."[24]

*Rust* is analogous to the case at bar. As in *Rust,* the district court announced its decision in J.M.R.'s favor, but stated that it would not enter a written order. Similar to *Rust,* the district court's oral pronouncement was not merely administrative or intended to restore courtroom decorum; it pertained to the substantive outcome of the dispute.

Although J.M.R. maintains that *Rust* does not apply to this case because the district court's oral order to release J.M.R. was an injunction, not a judgment, we find this argument unpersuasive for two reasons. First, NRCP 65(f) states that district courts "may make prohibitive or mandatory orders" in child custody suits "with or without notice or bond, as may be just." However, J.M.R.'s permanency review did not constitute a "child custody suit" because there was no trial and no adverse parties sought to establish custody of J.M.R. Consequently, the district court's release order was not an injunction.

Second, the *Rust* holding is broader than J.M.R. suggests. Although in *Rust* we focused on the ineffectiveness of the district court's oral pronouncements of *judgment,* we also expressly stated that "[t]he district court's oral pronouncement from the bench, the clerk's minute order, and even an unfiled written order are ineffective for any purpose."[25] This language indicates that we did not intend to limit the *Rust* holding to judgment pronouncements.[26]

The Nevada Rules of Civil Procedure and local rules of practice further support our rationale that taking action on appeal before the

---

[22]*Id.* at 688, 747 P.2d at 1381.

[23]*Id.* at 688, 747 P.2d at 1382.

[24]*Id.* at 689, 747 P.2d at 1382 (citations omitted).

[25]*Id.*

[26]*See also Paradise Palms v. Paradise Homes,* 93 Nev. 488, 568 P.2d 577 (1977) (a notice of appeal from an order denying a motion for change of venue was ineffective before the district court's entry of judgment); *Cunningham v. District Court,* 102 Nev. 551, 556, 729 P.2d 1328, 1331 (1986) (a district court order mandating the release of videotapes that lacked a file stamp, case number, docket number or department number, was ineffective for any purpose because it had not been properly entered).

district court formally enters an order is inappropriate because the court might alter its decision. NRCP 58(c) provides that "[t]he filing with the clerk of a judgment, signed by the judge, or by the clerk, as the case may be, constitutes the entry of such judgment, and no judgment shall be effective for any purpose until the entry of the same, as hereinbefore provided." Eighth Judicial District Court Rule 2.24(b) does not permit a party to file a reconsideration motion until after service of written notice of the order.[27]

J.M.R. advances *Ham v. District Court*[28] and *Kellar v. District Court*[29] for the propositions that we have previously upheld sanctions based upon oral orders and have previously acted upon oral orders. While this is true, *Ham* and *Kellar* do not support J.M.R's position. In *Ham,* we granted a writ petition to consider the district judge's oral order to disqualify himself.[30] *Ham* is distinguishable because in *Ham* the oral order did not direct the parties to take any action or dispose of substantive matters in the case. Instead, *Ham* dealt with a case management issue related to the overall administration of the proceedings. District courts have wide discretion to control the conduct of proceedings pending before them.[31] The *Ham* order related to the district court's ability to ensure that the judicial proceedings continue with regularity and neither party gained a procedural or tactical advantage as a result of the order. To hold such oral orders unenforceable would greatly disturb the judicial system. Unlike *Ham,* the district court's oral orders in this case pertained to the parties and the merits of the underlying controversy.

J.M.R.'s reliance on *Kellar* is equally unavailing. In *Kellar,* upon the district court's oral order, court staff orally apprised counsel that the district court rescheduled a hearing from 9:15 a.m. to 1:45 p.m. After counsel failed to appear at the appropriate time, the district court held counsel in contempt, which we upheld.[32] However, *Kellar* does not advance J.M.R.'s contentions because it dealt with summary contempt, not contempt resulting from disobeying a court order. We have previously held that counsel's failure to appear at a scheduled hearing constitutes summary contempt be-

---

[27]This opinion does not preclude a court from entering an interlocutory order pursuant to NRCP 54(b).

[28]93 Nev. 409, 566 P.2d 420 (1977).

[29]86 Nev. 445, 470 P.2d 434 (1970).

[30]93 Nev. at 410-11, 566 P.2d at 421-22.

[31]*G. & M. Properties v. District Court,* 95 Nev. 301, 305, 594 P.2d 714, 716 (1979).

[32]86 Nev. at 447, 450-51, 470 P.2d at 435, 438.

cause the court can observe counsel's absence and thus the misconduct occurs within the court's immediate presence.[33]

Consequently, we hold that dispositional court orders that are not administrative in nature, but deal with the procedural posture or merits of the underlying controversy, must be written, signed, and filed before they become effective. However, nothing in this opinion precludes a court from summarily punishing a party who commits contempt in the court's immediate presence, pursuant to NRS 22.030.[34] Additionally, oral court orders pertaining to case management issues, scheduling, administrative matters or emergencies that do not allow a party to gain an advantage are valid and enforceable.

We wish to emphasize that the district court acted in good faith by expecting the parties to comply with its oral release order, especially after the court expressly clarified the order on October 13, 2003. By refusing to follow the district court's mandate, the DCFS created the appearance that it considered itself at liberty to disregard the judicial order. Not surprisingly, the district court found the DCFS' conduct contemptuous. While we appreciate the difficulty of the DCFS' position and we do not doubt that the DCFS had J.M.R.'s best interests in mind, the DCFS handled the situation inappropriately. The DCFS made no effort to communicate its release concerns and considerations to the district court. It also failed to pursue other options for challenging the district court's oral release order, including a writ petition to this court.

Nevertheless, we are compelled to grant the DCFS' petition due to a mistake of law. The district court's understandable mistake resulted from unsettled precedent; and therefore, we take this opportunity to clarify the law and provide guidance on the issue. Requiring courts to enter written orders is essential because oral orders are almost always unclear and subject to varying interpretations. Persons who are not present at the time the court makes an oral order have no adequate basis for ascertaining the court's mandate. Consequently, as in this case, oral orders are subject to greater challenges.

The need for clarity and lack of ambiguity are especially acute in the contempt context. "An order on which a judgment of contempt is based must be clear and unambiguous, and must spell out the details of compliance in clear, specific and unambiguous terms

---

[33]*In re Mitchell,* 102 Nev. 61, 62, 714 P.2d 1007, 1008 (1986).

[34]Because a court's contempt order may be subject to the court's immediate enforcement, the lack of a written finding of contempt may not impede the affected party's right to challenge the contempt order via a writ petition.

so that the person will readily know exactly what duties or obligations are imposed on him.''[35] A court order which does not specify the compliance details in unambiguous terms cannot form the basis for a subsequent contempt order.[36] Furthermore, entry of written orders promotes effective and meaningful appellate review. Because we conclude that the district court's orders were ineffective because they were oral,[37] we need not address the DCFS' contention that the district court's contempt order was unclear and ambiguous.

## CONCLUSION

We conclude that the district court had jurisdiction to issue its release order under NRS 432B.560(1)(a) and NRS 432B.580, and it needed not find that the DCFS acted arbitrarily and capriciously before it could examine the DCFS' child development and placement decisions. We further conclude that the district court's oral release order was ineffective, and consequently, it could not serve as a basis for the subsequent contempt order. Dispositional court orders that are not administrative in nature, but deal with the procedural posture or merits of the underlying controversy, must be written, signed, and filed before they become effective. Oral orders dealing with summary contempt, case management issues, scheduling, administrative matters or emergencies that do not allow a party to gain a procedural or tactical advantage are valid and enforceable. We therefore grant the DCFS' petition for a writ of prohibition. The clerk of this court shall issue a writ of prohibition directing the district court to vacate its order holding the DCFS in contempt of court.

[35]*Cunningham v. District Court,* 102 Nev. 551, 559-60, 729 P.2d 1328, 1333-34 (1986).

[36]*State Indus. Ins. System v. Sleeper,* 100 Nev. 267, 270, 679 P.2d 1273, 1275 (1984).

[37]The district court's oral contempt order was also ineffective because the predicate oral release order was invalid.