140 Nev., Advance Opinion 39

## IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF J.B., A MINOR.

CLARK COUNTY DEPARTMENT OF
FAMILY SERVICES; AND CLARK
COUNTY DISTRICT ATTORNEY'S
OFFICE,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
DAVID S. GIBSON, JR., DISTRICT
JUDGE,
Respondents,
and
J.B., A MINOR; MILES STANO JR.;
AND LINDSEY B.,
Real Parties in Interest.

No. 87588

FILED

JUN 13 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order determining placement of a minor child in NRS Chapter 432B proceedings.

*Petition granted.*

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Payal V. Patel, Deputy District Attorney, Clark County, for Petitioners.

Joseph Dalia, Jr., Las Vegas, for Real Party in Interest J.B.

The Grigsby Law Group and Abira Grigsby, Las Vegas,
for Real Party in Interest Miles Stano Jr.

The Law Offices of Frank J. Toti, Esq., and Frank J. Toti, Las Vegas,
for Real Party in Interest Lindsey B.

Hutchison & Steffen, LLC, and Joseph C. Reynolds and Todd L. Moody, Las Vegas,
for Amici Curiae Becky Whipple and Jay Whipple.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

## OPINION

By the Court, BELL, J.:

Nevada law describes the procedure required to place a child in need of protection outside of the home. Historically, the child welfare statutes provided preference for relative placement only; however, in 2021, the legislature expanded the statutory placement preference to include fictive kin—persons who are "not related by blood" but who have "a significant emotional and positive relationship with the child." *See* NRS 432B.0657. Today, Nevada law provides that when consistent with a child's best interest, placement preference should be given to an adult with a preexisting relationship with the child. *See* NRS 432B.390; NRS 432B.550. In this case, the district court ordered placement of a child based on blood relations alone. We now clarify that the term "fictive kin" requires an evaluation of the relationship from the perspective of both the child and the

[1]The Honorable Patricia Lee, Justice, being disqualified, did not participate in the decision of this matter.

adult and makes clear that blood relatives do not enjoy a legal placement preference over fictive kin. We also emphasize that placement decisions must be based on a child's best interest and recognize that, to this end, a child must be meaningfully represented in all stages of a placement proceeding.

## FACTS AND PROCEDURAL HISTORY

The parents of Real Party in Interest J.B. were arrested for the homicide of J.B.'s older sibling. Nine months later, J.B. was born. At the time, both of J.B.'s parents were still incarcerated. J.B.'s mother, Real Party in Interest Lindsey B., provided Petitioner Department of Family Services (DFS) the names of J.B.'s maternal grandmother, J.B.'s maternal aunt, and the custodian of J.B.'s surviving sibling as possible placements for J.B. J.B.'s father, Real Party in Interest Miles Stano Jr., requested a paternity test but also offered J.B.'s paternal grandfather, Miles Stano Sr., and a paternal aunt as possible placements.

At the initial protective custody hearing, the district court inquired about possible relative or fictive kin placement. DFS had not yet solidified a placement, so the court placed J.B. in the temporary custody of UMC hospital. The court ordered DFS to provide for the placement, care, and supervision of J.B. Within a few days, DFS placed J.B. with Amici Curiae Becky and Jay Whipple. The Whipples were friends of J.B.'s grandmother and were not licensed foster parents at the time of placement. The district court later signed an order affirming J.B.'s placement with the Whipples, who were described as "Unlicensed Fictive Kin" in the order. No party objected to DFS's initial placement or the district court's designation of the Whipples as J.B.'s fictive kin.

Months after J.B.'s placement with the Whipples, Miles Jr.'s paternity was established. After the paternity determination, Miles Jr. requested again that J.B. be placed with Miles Sr. in Illinois. DFS submitted an Interstate Compact on the Placement of Children (ICPC) request, which was required to place J.B. out of state with Miles Sr. DFS received the completed ICPC approving Miles Sr. as a possible placement nearly nine months after J.B.'s initial placement with the Whipples. By that point, the Whipples had become licensed foster parents.

After the ICPC completion, the district court scheduled a placement hearing. Rather than taking evidence concerning J.B.'s placement and best interest at the hearing, the court summarily held as a matter of law that Miles Sr. enjoyed a statutory preference over the Whipples because Miles Sr. was a blood relative. The district court apparently no longer considered the Whipples fictive kin, commenting that "fictive kin cannot be created through placement" and that even if the Whipples were fictive kin, they would still be "secondary to a blood relative." The district court's order contains no factual findings related to J.B.'s best interest, instead resting entirely on the district court's belief that Miles Sr. enjoyed a familial preference over the Whipples and that the preference itself established the best interest of J.B.

Unfortunately, J.B.'s counsel failed to appear at the placement hearing. The court had previously appointed a Children's Attorney Project (CAP) attorney for J.B., but J.B. suffered from minimal representation throughout these proceedings. The district court first ordered "a CAP attorney be appointed" to represent J.B. in an order filed February 15, 2023. Despite this order, no attorney appeared for J.B. until May 15. After the May hearing, no attorney appeared for J.B. at the next five proceedings. In

SUPREME COURT
OF
NEVADA

(O) 1947A

4

August, DFS raised concerns that J.B. was unrepresented. At that time, court personnel indicated the case was assigned to a specific pro bono CAP attorney. Even so, no notice of appearance was filed until October 30, 2023, nearly nine months after the court initially appointed a CAP attorney for J.B. and a few weeks after the placement hearing.

Prior to the placement hearing, J.B.'s counsel informally asked the district attorney for more time to prepare for the hearing; however, the parties did not stipulate to continuing the matter. J.B.'s counsel failed to appear for the hearing. The State informed the court of counsel's request for additional time, but the district court declined to postpone the hearing. Without J.B.'s counsel present, the court ordered DFS to place J.B. with Miles Sr.

At the hearing on DFS's subsequent motion for reconsideration—at which J.B.'s counsel again failed to appear—the district court did not find the absence of J.B.'s attorney at the placement hearing a compelling reason for reconsideration. During the reconsideration hearing, the district court reiterated its view that a suitable blood relative would always be preferred in placement decisions over unrelated fictive kin: "Whether you believe me or not and whether I've stated it sufficiently clearly or not, I have made a best interest analysis. It is in a child's best interest to be placed with safe family over literally anyone else." The district court indicated frustration with DFS for continuing to argue that the Whipples were fictive kin. Despite the court's initial order designating the Whipples as fictive kin and despite the Whipples being unlicensed at the time of placement, the court noted, "we keep talking about this family as fictive kin when they're not, when this was originally a foster placement while waiting for paternity and an ICPC for the family who was coming

forward asking from the first day for placement of the child." The court emphasized that fictive kin lack equal footing to blood relatives for placement purposes and denied the motion for reconsideration.

After the court denied reconsideration, DFS and the Clark County District Attorney filed a petition for a writ of mandamus challenging the district court's decision placing J.B. with Miles Sr. We directed answers and stayed the district court's placement order pending our consideration of the matter. Lindsey filed a joinder to the petition, and J.B. filed a response in support of the requested relief. Miles Jr. filed an answer in support of the placement decision and opposing issuance of a writ. The Whipples filed an amici brief arguing that J.B.'s best interest would be served by continued placement with the Whipples.

## DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Mandamus will not issue when the petitioner has "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. The district court's placement order here is not appealable, so writ relief is appropriate. *See Philip R. v. Eighth Jud. Dist. Ct.*, 134 Nev. 223, 226, 416 P.3d 242, 246 (2018).

Writ relief is discretionary. *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Still, this court may exercise its discretion to consider a petition when doing so "presents an opportunity to clarify an important issue of law and . . . serves judicial economy." *Dekker/Perich/Sabatini Ltd. v. Eighth Jud. Dist. Ct.*, 137 Nev. 525, 527, 495 P.3d 519, 522 (2021). The present petition raises an important question of law, namely, how to evaluate a possible fictive kin relationship in a

placement proceeding. Because the modifications to Nevada's placement preference scheme through the addition of fictive kin have yet to be addressed by this court, we grant the petition to determine, first, how to evaluate a newborn child's possible fictive kin and, second, whether Nevada's familial preference prioritizes placement with blood relatives over fictive kin.

*The Whipples are J.B.'s fictive kin*

Given the court's original uncontested determination at the time of placement, the Whipples are J.B.'s fictive kin, and the district court arbitrarily and capriciously abused its discretion in later finding otherwise. *See Div. of Child & Fam. Servs. v. Eighth Jud. Dist. Ct.*, 120 Nev. 445, 449, 92 P.3d 1239, 1242 (2004) (noting writs of mandamus serve "to control an arbitrary or capricious exercise of discretion" (internal quotation marks omitted)). DFS first identified the Whipples as J.B.'s fictive kin in the preliminary protective hearing report filed before the original protection hearing. Miles Jr. proffered no contest to J.B.'s initial placement with the Whipples, who at that point were not licensed foster parents. In a March 28, 2023, order, the district court expressly ratified J.B.'s placement with the Whipples as J.B.'s fictive kin. Again, no one objected.

The Whipples have been designated as J.B.'s fictive kin from the genesis of this case. The district court placed J.B. with the Whipples as fictive kin and cannot change the settled legal designation of a placement when no new relevant facts are before it and no party has challenged that designation. Irrespective of our other conclusions, the category of fictive kin cannot be used to temporarily place children with unlicensed, unrelated custodians until a "better option" comes along. Doing so runs contrary to the state's paramount obligation in placing a child outside the home: the child's best interest. *See* NRS 432B.390(6); 432B.550(6) (allowing

placement for children in need of protective custody with hospitals, kin, or licensed shelters). The fact that the Whipples later became licensed foster parents does not invalidate the initial fictive kin designation. The district court provided no rationale for its conflicting orders, and none are clear to this court.

NRS 432B.0657 defines "fictive kin" as "a person who is not related by blood to a child but who has a significant emotional and positive relationship with the child." The district court offered, and Miles Jr. echoes, a reading of the statute that requires the child to have a meaningful relationship with the potential fictive kin before placement. Looking at the relationship only from the perspective of the child would preclude a newborn from being placed with fictive kin, given that a newborn is incapable of having formed a preexisting relationship.

This interpretation is inconsistent with the plain text of the statute. *See Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020) ("[W]e will interpret a statute or regulation by its plain meaning unless the statute or regulation is ambiguous"). The statute's applicability does not depend solely upon the child's perception of the relationship. Instead, to be considered fictive kin, the statute requires a significant emotional and positive relationship between the adult and child. When deciding whether a nonrelated party can be designated as a child's fictive kin, the court should look for manifestations of care from the perspectives of both the prospective custodian and the child. In the case of an infant, analysis of fictive kin may be guided heavily or entirely by the bond the prospective custodian has with the child. Prospective custodians who have a connection with the family and demonstrate a commitment and

willingness to care for the infant can qualify as fictive kin even though the newborn is not yet in a position to have developed a reciprocal bond.

We additionally find it unlikely that the legislature would have enacted a statute implicitly excluding an infant from being placed with fictive kin. Nothing in the statute suggests the legislature intended to prevent a newborn from being placed with a meaningful, responsible person in the child's life merely because the adult and child do not share the same DNA. Nor does the statutory scheme support placing an infant in a foster home with strangers when an unrelated but bonded adult is willing to take care of the infant. *See Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007) ("[A] statute's language should not be read to produce absurd or unreasonable results." (internal quotation marks omitted)). Under the clear language of the statute, infants do not face any barrier to placement with fictive kin.

*Nevada law does not privilege blood relatives over all nonrelated parties in child placement matters*

The district court grounded its placement decision on its stated belief that Nevada law "favors family over [all] others" for placement. This is incorrect. *See Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014) (reviewing issues of statutory construction de novo).

Even prior to the legislature's addition of a fictive kin status, this court recognized that the mere existence of a suitable blood relative does not relieve the district court of its obligations to place a child according to the child's best interest. *See Clark Cnty. Dist. Att'y v. Eighth Jud. Dist. Ct.*, 123 Nev. 337, 346, 167 P.3d 922, 928 (2007) (noting "suitable relatives are not necessarily entitled to custody" and clarifying that the primary focus of a placement proceeding should be on the child's best interest). Indeed, this court has held that if a nonfamily placement is made and a relative

later comes before the court, the district court must "determine whether the familial preference exists and, if so, consider placing the child with the relatives, if this placement serves the child's best interest." *Id.* This was the case here, yet the district court made no findings on J.B.'s best interest. The court instead decided to place J.B. based solely on the bare assertion of biological superiority. Nevada law does not support the court's doing so.

By its plain text, Nevada's statutory placement preference scheme offers no differentiation between a child's blood relative and fictive kin. *See Chandra v. Shulte*, 135 Nev. 499, 501, 454 P.3d 740, 743 (2019) ("Where a statute is clear and unambiguous, this court gives effect to the ordinary meaning of the plain language of the text without turning to other rules of construction."). NRS 432B.550(6) sets out Nevada's relevant placement preferences. First, it is "presumed to be in the best interests of the child to be placed together with the [child's] siblings." NRS 432B.550(6)(a). After consideration of this factor, NRS 432B.550(6)(b) requires that

> [p]reference must be given to placing the child in the following order:
>
> (1) With any person related within the fifth degree of consanguinity to the child or a fictive kin, and who is suitable and able to provide proper care and guidance for the child, regardless of whether the relative or fictive kin resides within this State.
>
> (2) In a foster home that is licensed . . . .

While this statute unambiguously creates a preference for relatives and fictive kin over foster homes, it does not prefer relatives over fictive kin; it puts relatives and fictive kin on a par with each other.

This is evident from the statute's structure, which sets out two categories of placements: (1) relatives or fictive kin and (2) foster homes. After listing blood relatives and fictive kin, the statute notes both must be suitable, further suggesting the two are on equal footing. The West Virginia Court of Appeals considered a similar statute in *In re G.G.*, 896 S.E.2d 662, 672 (W. Va. 2023). The West Virginia statute provided, in relevant part, that "[w]hen a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child." W. Va. Code § 49-4-601a (2020). Referencing this statute, a plurality of the court concluded that "there is no statutory preference for permanent placement of a child with blood relatives of that child" over fictive kin. *In re G.G.*, 896 S.E.2d at 675 (Wooton, J., concurring). Based upon Nevada's analogous statutory placement provisions, we similarly conclude that there is no preference for blood relatives over fictive kin under Nevada law.

Here, the district court's order placing J.B. with Miles Sr. was premised on a biological-familial preference that does not exist in Nevada law. The order is vacated. On further proceedings to determine the child's placement, we direct the district court to hear evidence, make express findings regarding J.B.'s best interest, and place J.B. accordingly. *See Clark Cnty. Dist. Att'y*, 123 Nev. at 348, 167 P.3d at 929 ("Given the importance of the district court's child placement decisions as well as the inherent difficulties in reviewing matters within the district court's discretion, written factual findings, both with respect to credibility determinations as well as evaluations of the child's best interest, must be made."); *Monahan v. Hogan*, 138 Nev. 58, 67-68, 507 P.3d 588, 595-96 (Ct. App. 2022) (explaining how to conduct a general best interest analysis absent more specific statutory authority).

*The district court abused its discretion in placing J.B. when J.B.'s counsel was absent*

We also address the impact of J.B.'s counsel's absence throughout the proceedings. Nevada law requires that a child subject to protectionary proceedings "must be represented by an attorney at all stages of any proceedings held pursuant to NRS 432B.410 to 432B.590." NRS 432B.420(2). While the court originally appointed a CAP attorney for J.B., we are troubled by the several instances where the district court disregarded J.B.'s statutory right to representation. Moreover, while J.B.'s appointed attorney should have formally requested a continuance of the hearing or ensured someone appeared for J.B., counsel's failures do not relieve the district court of its responsibility to ensure statutory compliance in the proceedings. The paramount importance of a child having representation in such proceedings, especially when the child is preverbal, has been established by statute and rule. NRS 432B.420; *see also* Nevada Rules of Professional Conduct 1.14.

Even absent a formal motion to continue, the district court has discretion to grant or deny a continuance and otherwise retains broad scheduling powers. *See Bongiovi v. Sullivan*, 122 Nev. 556, 570, 138 P.3d 433, 444 (2006); NRCP 16(b)(4) ("A schedule may be modified by the court for good cause."). We do not seek to unduly limit the district court's discretion on these matters but recognize the district court abuses its discretion when the court, with knowledge that a child's attorney is not present at the placement hearing and seeks a continuance, offers no reason why a continuance could not be made and no compelling reason to proceed without counsel present. We conclude the legislature clearly intended children to have a voice in placement determinations and effectuated that intent by enacting mandatory provisions requiring children be represented

in placement hearings. The strong language of NRS 432B.420 mandating counsel compels the finding that it was an abuse of the district court's broad discretion to proceed with a change in J.B.'s placement absent any meaningful representation for J.B.

*This matter must be heard by a different district court judge*

Lastly, DFS brings to our attention certain troubling statements made by the district judge on the record in this case, including, during the hearing on DFS's motion for reconsideration, the judge's assertion that he "wasn't going to reconsider that order," calling DFS's claim that allegations of abuse exist against Miles Sr. "a real convenient argument to make" and disparaging foster parents as mere "placeholder[s]."

This court exercises its independent review of the undisputed facts to determine if a judge's impartiality might objectively be questioned. *See Ybarra v. State*, 127 Nev. 47, 51, 247 P.3d 269, 272 (2011) ("Ultimately, we must decide 'whether a reasonable person, knowing all the facts, would harbor reasonable doubts about [the judge's] impartiality.'" (quoting *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 431, 438, 894 P.2d 337, 341 (1995), *overruled on other grounds by Towbin Dodge, LLC v. Eighth Jud. Dist. Ct.*, 121 Nev. 251, 112 P.3d 1063 (2005))). A judge is presumed impartial, *Ybarra*, 127 Nev. at 51, 247 P.3d at 272; however, in evaluating whether a case should be reassigned, we consider, among other things, "whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of [the judge's] mind previously-expressed views or findings determined to be erroneous." *Roe v. Roe*, 139 Nev., Adv. Op. 21, 535 P.3d 274, 291 (Ct. App. 2023) (quoting *Smith v. Mulvaney*, 827 F.2d 558, 562 (9th Cir. 1987)).

Here, the district court expressly indicated an unwillingness to reconsider DFS's arguments regarding fictive kin and manifested a fundamental misunderstanding of the Whipples' legal status. We are not convinced the district judge will be able to set aside his view in this case that "[i]t is in a child's best interest to be placed with safe family over literally anyone else," and so, we order the case transferred to a different judge for all further proceedings.

## CONCLUSION

A fictive kin is a person who has a significant emotional and positive relationship with a child. The legislature's inclusion of fictive kin as an alternative placement to relatives recognizes the significant role certain unrelated people can play in a child's life and indicates an intent for children to be placed, when possible, into a home uniquely interested in the well-being of the child. No preference for placement with extended biological family over fictive kin exists in Nevada law. Accordingly, we grant the petition and direct the clerk of this court to issue a writ of mandamus vacating the order placing J.B. with Miles Sr. Further, the writ of mandamus shall compel the chief judge of the Eighth Judicial District Court to reassign the case to a different district judge to hold further proceedings to determine placement based on J.B.'s best interest. We note the continuing requirement that J.B. be represented by counsel at future

proceedings. In light of this decision, we vacate our November 30, 2023, stay.

_____, J.
Bell

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre