139 Nev., Advance Opinion 21

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

MAGGIE ROE, N/K/A MAGGIE COX,
Appellant,
vs.
JASON J. ROE,
Respondent.

No. 84893-COA

FILED

JUL 27 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order modifying custody of a minor child. Eighth Judicial District Court, Family Division, Clark County; Dawn Throne, Judge.

*Affirmed in part, reversed in part, vacated in part, and remanded.*

Roberts Stoffel Family Law Group and Melvin R. Grimes, Las Vegas, for Appellant.

Page Law Firm and Fred Page, Las Vegas, for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we address an unclear area of Nevada child custody law, provide clarification with a definition of sole physical custody, and outline what a district court must consider when entering an order for

sole physical custody.[1]  Further, we direct district courts to retain their substantive decision-making authority over custodial modifications and parenting time allocations, as well as reiterate that, in family law cases, being a prevailing party alone is not a sufficient basis for an award of attorney fees under NRS 18.010.  This opinion also clarifies when reassignment of a case to a different judge on remand is appropriate because of the requisite fairness demanded in ongoing child custody proceedings.

The Nevada Legislature has directed that "the sole consideration" in a custodial action "is the best interest of the child." NRS 125C.0035(1).  Yet, it is left to our district courts to translate a child's best interest into a quantifiable, clearly defined parenting time schedule.  *See generally Bluestein v. Bluestein*, 131 Nev. 106, 112, 345 P.3d 1044, 1048 (2015).  To aid district courts, our appellate courts have given direction on what allocation of parenting time constitutes a physical custody characterization from joint to primary and vice versa.  *See id.* at 113, 345 P.3d at 1049 (directing district courts to consider *Rivero*'s 40-percent parenting time conclusion but providing that it is not the sole consideration in characterizing custodial arrangements); *Rivero v. Rivero*, 125 Nev. 410, 417, 216 P.3d 213, 219 (2009) (defining joint physical custody generally as a parenting time arrangement where each party has physical custody at least 40 percent of the time), *overruled on other grounds by Romano v. Romano*, 138 Nev. 1, 501 P.3d 980 (2022).

---

[1]We originally resolved this appeal in an unpublished order. Appellant subsequently filed a motion to reissue the order as a published opinion.  We grant the motion and replace our earlier order with this opinion. *See* NRAP 36(f). Appellant also filed a petition for rehearing of our prior decision affirming the custodial modification.  Having reviewed the petition, we deny rehearing. *See* NRAP 40(c).

By comparison, there is little direction as to what a district court must consider when entering an order for sole physical custody. Sole physical custody is a custodial arrangement where the child resides with only one parent and the noncustodial parent's parenting time is restricted to no significant in-person parenting time. Sole physical custody is different than primary or joint physical custody because sole physical custody conflicts with this state's general policy for courts to support "frequent associations and a continuing relationship" between parent and child. *See* NRS 125C.001(1). Likewise, sole physical custody orders substantially impede the fundamental parental rights of the noncustodial parent. *See Gordon v. Geiger*, 133 Nev. 542, 545-46, 402 P.3d 671, 674 (2017); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) (concluding that parents have a fundamental interest "in the care, custody, and control of their children").

In this opinion, we provide a definition of sole physical custody to ensure custodial orders are properly characterized. We direct district courts when entering an order for sole physical custody to first find either that the noncustodial parent is unfit for the child to reside with, or to make specific findings and provide an adequate explanation as to the reason primary physical custody is not in the best interest of the child. Following either of these findings, the district court must consider the least restrictive parenting time arrangement possible to avoid constraining the parent-child relationship any more than is necessary to prevent potential harm caused by an unfit parent and meet the best interest of the child. If the court enters a more restrictive parenting time arrangement than is otherwise available, it must explain how the greater restriction is in the child's best interest. Further, we reiterate that district courts must retain substantive decision-

making authority over custodial modifications and parenting time allocations and may not substitute a third party's discretion for their own.

Here, substantial evidence supports the district court's decision to modify physical custody based on its finding that there had been a substantial change in circumstances affecting H.R.'s welfare and its best interest factor findings. However, the district court abused its discretion by improperly characterizing its custodial award as primary physical custody when it was in actuality sole physical custody, thereby overly restricting appellant Maggie Cox's parenting time without adequate findings, failing to consider any less restrictive arrangement, and delegating its substantive decision-making authority to a therapist. So, while we affirm the modification of physical custody, we reverse the parenting time allocation and vacate the award of attorney fees and costs. On remand, we also direct the chief judge to reassign this case to a different judge to ensure fairness in the ongoing child custody proceedings.

## FACTS AND PROCEDURAL HISTORY

Appellant Maggie Cox and respondent Jason J. Roe had been divorced for approximately seven years when Maggie filed a motion in 2020 to modify physical custody of their child H.R., born in 2009, who was then eleven years old. At the time, the parties shared joint legal and physical custody, with the most recent custodial order being entered by stipulation in 2017. In her motion, Maggie argued that H.R.'s behavior and attitude toward her had become increasingly and alarmingly disrespectful and aggressive, which she attributed in part to Jason's conduct and influence. In addition to seeking primary physical custody, Maggie asked the district court to enter orders for therapy for H.R. and requested a brief focused assessment to determine the likely cause of H.R.'s change in demeanor and

COURT OF APPEALS
OF
NEVADA

(O) 1947B

4

behavior. Jason opposed the motion and filed a countermotion for primary physical custody alleging Maggie was emotionally unstable and that H.R. preferred to live with him. The district court granted the motion for therapy, granted the request for a brief focused assessment, and set a hearing date on the parties' motions to modify custody.

The therapist who conducted the brief focused assessment, Maureen Zelensky, MFT, met with H.R., Maggie, and Jason multiple times to conduct her assessment. She also reviewed the entire record of the case, spoke with the parties' attorneys, and consulted with H.R.'s personal therapist. Zelensky's final report to the district court recognized the problems between Maggie and H.R. and suggested that Jason was likely engaging in parental alienation. Zelensky found that Maggie was almost certainly suffering from anxiety and possibly from post-traumatic stress disorder, which likely contributed to her highly emotional conduct. Based on her assessment, Zelensky recommended that the district court enter a behavior order for both parents and maintain the week-on/week-off parenting time schedule. The district court adopted the recommendations and entered an order for the parties to maintain joint legal and physical custody. The district court set a date for a status check.

Before the status check, the situation between Maggie and H.R. took a dramatic turn for the worse. On two separate occasions, H.R. was taken into custody by law enforcement for battery against Maggie while Maggie was exercising her parenting time. The police believed H.R. was the primary aggressor both times, so they took H.R. for a 12-hour detainment period after each incident. The record is clear that Maggie never called the police on H.R. In the first situation, the call came from her mother, and in the second situation, the call was from Jason. The record

also supports Maggie's claim that once others had called the police, she had little choice but to let H.R. be taken into custody.[2]

Based on these incidents, Jason filed an emergency motion for temporary sole legal and sole physical custody of H.R. In March 2021, the district court granted the motion, finding "something wrong with the parent who cannot manage an 11-year-old," that Maggie had been the one to call the police on H.R., and that her behavior was "histrionic." The court also found that upon H.R.'s release from custody, Maggie should have let H.R. go with Jason, despite it still being Maggie's parenting time. The court supported this conclusion by finding that Maggie "is obviously not able to parent her son" and "it is not safe when you have the police call out to your home as somebody might get shot, and it is not safe." The district court ordered Maggie's contact with H.R. immediately restricted to just six hours of parenting time weekly and reunification therapy sessions conducted by Dr. Sunshine Collins. The district court characterized its parenting time order as sole physical custody. The district court also appointed a guardian ad litem for H.R. and a parenting coordinator to help the parties, with the costs of each to be split between Maggie and Jason.

A few months later, Maggie took H.R. out for a day of bowling and shopping within her restricted parenting time allocation. During the outing, H.R. ran from Maggie, hid in a bathroom at a local store, and called Jason to be picked up. Maggie believed H.R. ran after becoming upset about

---

[2]With exceptions, an arrest is required when police respond to a reported battery constituting domestic violence and find probable cause supporting the commission of the offense, which results in a minimum 12-hour detainment period. See NRS 171.137(1); NRS 178.484(7).

losing the bowling game, while Jason claimed H.R. ran because he feared that Maggie would have him arrested again.

As a result of the continued conflict between Maggie and H.R., the parenting coordinator recommended in August 2021 that all contact be "paused" between Maggie and H.R. until the district court could sort out the issues between the parents. Along with her recommendation, the parenting coordinator also informed the court that Maggie, an educator, would likely be unable to pay for Dr. Collins's services. Dr. Collins was outside of Maggie's insurance network, and the district court had also ordered Maggie to pay other obligations, including child support to Jason. The parenting coordinator recommended that Jason bear some of the cost of reunification services and that he should be included in the sessions.

Jason filed an objection, in part, to the parenting coordinator's recommendation that he attend and partially pay for reunification services. In September 2021, the district court granted Jason's objection and ordered Maggie to "have [no contact]" with H.R. "outside of the therapeutic services" with Dr. Collins. At that point, Dr. Collins was requiring Maggie to attend several individual sessions before she would be allowed to start joint sessions with H.R., which Maggie was struggling to afford. Thus, by granting Jason's objection and entering an order for no contact between H.R. and Maggie outside of therapy, the district court effectively prohibited all contact of any kind between Maggie and H.R.[3]

Maggie withdrew her motion for primary physical custody shortly thereafter and instead asked the court to maintain joint legal and physical custody pursuant to the 2017 order. The district court set the case

_____

[3]The district court's order effectively ended all contact between Maggie and H.R. for the next six months.

for an evidentiary hearing in March 2022, now only on Jason's motion for modification of physical custody. The district court advised the parties that, at the hearing, they would be restricted from introducing evidence that predated the 2017 order.

During the March 2022 evidentiary hearing, Jason presented evidence that the child custody best interest factors favored his motion to modify custody, especially that H.R., who was now 12 years old, preferred to live with him. Evidence was also introduced that showed Maggie could not afford Dr. Collins's services and that both she and Dr. Collins agreed they were not a good therapeutic fit for Maggie's individual sessions. On March 11, 2022, day two of the hearing, the district court learned that its September 2021 order had prevented Maggie from contacting H.R. on the child's birthday and that the order had also prevented Maggie from sending gifts or cards to H.R. during the holidays. The court referred to this September order as "the no contact order of Dr. Collins." The district court then orally modified its no-contact order and allowed Maggie to send cards to, text, and call H.R. This oral modification was subsequently described by the district court as the "March 11, 2022, Order."

At the close of the hearing, the district court maintained joint legal custody but granted Jason what it called primary physical custody, finding a substantial change of circumstances in the severe deterioration of H.R. and Maggie's relationship and H.R.'s age and wishes. The district court also considered H.R.'s best interest and found that H.R. wanted to live with Jason, Jason had relatively superior mental health, and the

relationship between H.R. and Jason was comparatively less fraught.[4] *See* NRS 125C.0035(4)(a), (f), (h). The court merely referred to the "March 11, 2022, [oral] Order" in setting Maggie's parenting time, ostensibly restricting Maggie's parenting time to no contact with H.R. except for cards, texts, and calls. Thus, in the district court's final order modifying custody, Maggie was awarded no in-person parenting time with her child.

The district court also ordered Maggie to attend individual therapy with Dr. Collins twice per month, with the goal of working towards joint reunification sessions with H.R. If Maggie did not attend twice a month, the court ordered the downward adjustment in the child support order was to be terminated.[5] Dr. Collins was also given authority to determine when Maggie's parenting time could be expanded to potentially include in-person contact with H.R. Finally, the district court ordered Maggie to pay $11,365 in attorney fees and costs to Jason because he was the prevailing party. This appeal followed.[6]

---

[4]The district court did find that Maggie was more likely to allow H.R. to have frequent associations with Jason, *see* NRS 125C.0035(4)(c), but that "Dr. Collins will be able to address anything that Jason might say or do that is not supportive of [H.R's] relationship with Maggie . . . . This Court can also issue Orders to Enforce for Jason if necessary."

[5]The district court adjusted Maggie's child support obligation downward based on her extra costs to see Dr. Collins. However, based on invoices in the record, for Maggie to be treated by Dr. Collins twice a month would cost her significantly more than the downward adjustment offset.

[6]District and appellate courts are to expedite decisions affecting the custody of minor children, meaning resolutions must be reached in district court within six months of custody or parenting time being contested absent unforeseeable circumstances with specific findings justifying exceeding that time period. *See* SCR 251. The temporary custody orders in this case were

*ANALYSIS*

On appeal, Maggie raises issues with the limitations the district court placed on her parental rights and the fairness of the proceedings below. Maggie contends that the district court: (1) did not have substantial evidence to modify child custody, improperly considered child testimony when determining what was in H.R.'s best interest, and abused its discretion in finding there was a substantial change of circumstances since the 2017 order; (2) demonstrated actual bias against her; (3) violated her parental rights; and (4) abused its discretion in awarding Jason attorney fees and costs. Maggie also argues that the district court's errors are to such a degree that this court should reverse the district court's order and remand with instructions to conduct a new evidentiary hearing presided over by a different judge. In contrast, Jason argues that the district court's order is supported by substantial evidence, Maggie's fundamental parental rights are not properly at issue as she can reconnect with H.R. as soon as she does the work prescribed by Dr. Collins, and he is entitled to attorney fees and costs as the prevailing party.

*The district court's decision to modify physical custody is supported by substantial evidence*

Maggie argues that the order modifying physical custody is not supported by substantial evidence and that the district court abused its discretion by finding a substantial change in circumstances. A district court's child custody order is reviewed for an abuse of discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). Factual findings of the district court will not be set aside if "supported by substantial

in effect for more than one year and contained very few findings, and none explained the lengthy delays.

evidence, which is evidence that a reasonable person may accept as adequate to sustain a judgment." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007) (footnote omitted).

We begin with the issue of child testimony. Maggie alleges that testimony given at the hearing by the guardian ad litem that recounted H.R's wish to live with Jason, which is a best interest factor a district court must consider under NRS 125C.0035(4)(a), was both inadmissible hearsay and unrecorded child testimony under *Gordon v. Geiger*, 133 Nev. 542, 547, 402 P.3d 671, 675 (2017).[7] Maggie's argument that the district court improperly considered child testimony fails for three reasons. First, she does not address the effect of similar testimony given by Jason, H.R.'s stepmother, and Dr. Collins, and therefore, she has not shown how the admission of the guardian ad litem's testimony affected her substantial rights. *See Wyeth v. Rowatt*, 126 Nev. 446, 465, 244 P.3d 765, 778 (2010) ("To establish that an error is prejudicial, the movant must show that the error affects the party's substantial rights so that, but for the alleged error, a different result might reasonably have been reached."). Second, while *Gordon* does direct that child interviews be recorded, the facts are distinguishable and its holding is limited to interviews intended to be used in lieu of in-court child testimony. *See Gordon*, 133 Nev. at 547-48, 402 P.3d at 675-76. Therefore, we decline to adopt an interpretation that would require a guardian ad litem to record a child's interview when the guardian ad litem's purpose is not to garner testimony but to protect the best interest

---

[7]*Gordon* provides "that child interviews must be recorded" and that child testimony must abide by the Uniform Child Witness Testimony by Alternative Methods Act. 133 Nev. at 547, 402 P.3d at 675; NRS 50.500- .620; *see also* NRCP 16.215.

of the child. *See* NRS 159A.0455; *see generally* NRCP 16.215(a), (f). Third, we note that a hearsay exception, such as a statement of H.R.'s then-existing mental or emotional condition, likely applies. *See* NRS 51.105(1).

Maggie also argues that Jason did not meet his burden to show a substantial change in circumstances affecting H.R.'s welfare and that the district court did not have sufficient evidence that modification was in H.R.'s best interest. *See Romano v. Romano*, 138 Nev. 1, 9, 501 P.3d 980, 986 (2022) (concluding that to modify custody a movant must show "there has been a substantial change in circumstances affecting the welfare of the child" and "the modification would serve the child's best interest").

The district court found that the severely deteriorating relationship between H.R. and Maggie and H.R.'s age and wishes constituted a substantial change in circumstances affecting H.R.'s welfare. These findings are supported by substantial evidence. Maggie acknowledged and explained her deteriorating relationship with H.R. in her motion to modify, which was the motion that initiated the matter before us. In that motion, she alleged that her relationship with H.R. had deteriorated to the point of H.R. calling her names, punching her, and locking her out of the home. By the time the matter reached the final evidentiary hearing, it was undisputed that the interactions between the two had devolved to include H.R. lashing out physically and running from Maggie. It was also undisputed that Maggie struggled to regulate her emotions during these conflicts. While the district court's findings that Maggie was primarily at fault for H.R.'s behavior are suspect based on the evidence introduced

during the hearing,[8] under *Romano* the court was only required to find that a substantial change in circumstances affecting H.R.'s welfare existed. *Romano*'s holding does not require the district court to properly diagnose the cause, even if it might be important in the ultimate custody decision.

Likewise, substantial evidence supported the district court's best interest findings that three factors favored Jason: (1) H.R.'s wishes; (2) Jason's mental health,[9] as compared with Maggie's "highly emotionally dysregulated" disposition; and (3) the nature of H.R.'s relationship with each parent.[10] *See* NRS 125C.0035(4)(a), (f), (h). Multiple witnesses,

---

[8]As mentioned above, Zelensky's report stated Jason was likely engaged in parental alienation, and we note that the district court did not give this evidence any weight. "Parental alienation is a strategy whereby one parent intentionally displays to the child unjustified negativity aimed at the other parent." Ken Lewis, *Parental Alienation Can Be Emotional Child Abuse*, National Center for State Courts: Trends in State Courts, 46, 47 (last visited June 29, 2023), https://cdm16501.contentdm.oclc.org/digital/collection/famct/id/1644. The result is damage to the child's relationship with the other parent, turning into rejection and hostility directed at the nonalienating parent. *Id.* Parental alienation is a "form of emotional child abuse." *Id.* Zelensky testified to Jason's behavior she personally witnessed. Additionally, the guardian ad litem testified she was concerned H.R. was being coached by Jason. Dr. Collins testified that she did "not believe that alienation [was] the *primary* reason for [H.R.'s] dissatisfaction with" their relationship "today," and the district court agreed. (Emphasis added.) Further, Maggie offered testimony that H.R. would come back from spending time with Jason making unusual recriminations for a young child, such as accusing Maggie of printing a fake college degree.

[9]The district court did not address in its order how this finding was affected by either Zelensky's report that Jason had taken psychotropic medications or Jason's own testimony that he took antidepressants.

[10]A potential fourth factor, H.R.'s physical and developmental needs, cannot be viewed as supporting the custody decision because it was

COURT OF APPEALS
OF
NEVADA

(O) 1947B

including therapists called to testify by both parties, attested to H.R.'s wishes and to Maggie's emotional state. It is undisputed that the nature of Maggie's and H.R.'s relationship had deteriorated to include H.R. becoming physically aggressive and running away. The record shows that by the time of the evidentiary hearing, H.R. was estranged from Maggie.

These factual findings were included in the district court's final order, and we do not reweigh evidence on appeal. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 238, 955 P.2d 661, 664 (1998) (noting that appellate courts are "not at liberty to weigh the evidence anew, and where conflicting evidence exists, all favorable inferences must be drawn towards the prevailing party"). Also, the standard of review here is deferential. *See Ellis*, 123 Nev. at 149, 161 P.3d at 242. We therefore conclude that substantial evidence supports the district court's findings that Jason demonstrated a substantial change in circumstances affecting H.R.'s welfare and supports the court's best interest factor findings. Thus, as the district court's findings allowed for a modification of the custody order, we affirm that determination. Yet we decline to give similar deference to its parenting time allocation.

*The district court's allocation of parenting time is contrary to Nevada law and policy*

Maggie argues that the district court's order infringed upon her parental rights and that the court's interlocutory and operative orders were so extreme that the district court effectively undermined her relationship with H.R. to the point of near termination of her parental rights. Jason

---

confusingly found to be "neutral" in part but "favor[ed] Jason" in part because "Maggie has not yet done the things she needs to do in order to" have a relationship with H.R. *See* NRS 125C.0035(4)(g).

argues that Maggie's fundamental parental rights are not properly at issue because she can simply follow the court's order, do the work as prescribed by Dr. Collins, and be reunited with H.R. as soon as Dr. Collins is satisfied with Maggie's progress.

"The district court has broad discretionary power in determining child custody," including parenting time. *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015) (internal quotation marks omitted). We review a district court's discretionary determinations deferentially, but deference is not owed to legal error or findings that "may mask legal error." *Id.* Here, there are three significant legal errors in the district court's order. First, the order restricts Maggie's parenting time to such a degree that it has unduly infringed upon Maggie's parental rights and effectively awarded sole physical custody to Jason without a sufficient legal basis or findings for so doing. Second, the district court improperly delegated its substantive authority to a third party, Dr. Collins. Finally, the order incorporates by reference what the district court called the "March 11, 2022, Order," which was its oral modification to "the no contact order of Dr. Collins" made midway through the evidentiary hearing, as its final parenting time order. No other findings or information are included as to how the "March 11, 2022, Order" controls Maggie's parenting time, so the final order is facially unenforceable. We address each error in turn.

*Sole physical custody*

The parent-child relationship is a fundamental liberty interest. *See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Rico v. Rodriguez*, 121 Nev. 695, 704, 120 P.3d 812, 818 (2005) (quoting *Troxel*, 530 U.S. at 65, in concluding that parents have a fundamental interest in the care, custody, and control of their children). A permanent change to parenting time affects

a parent's fundamental right concerning the custody of their child. *Gordon*, 133 Nev. at 546, 402 P.3d at 674. Even parents deemed highly emotionally dysregulated retain their fundamental rights. *Cf. Santosky v. Kramer*, 455 U.S. 745 (1982) (concluding that parents retain constitutional rights even if they are found to be unfit).

Nevada's district courts enter one of three parenting time arrangements in a custodial order—joint, primary, or sole physical custody. The Nevada Legislature and our supreme court have previously defined the first two parenting time arrangements and provided guidance on what a court must consider when entering an award for either joint or primary physical custody. *See, e.g.*, NRS 125C.0025; NRS 125C.003; NRS 125C.0035; *Rivero*, 125 Nev. at 424, 216 P.3d at 224. Our supreme court has defined joint physical custody as a custodial arrangement awarding "custody of the minor child or children to BOTH PARENTS and providing that physical custody shall be shared by the parents in such a way to ensure the child or children of frequent associations and a continuing relationship with both parents," which "must approximate an equal timeshare." *Rivero*, 125 Nev. at 424, 216 P.3d at 224 (quoting Hearing on S.B. 188 Before the Assemb. Judiciary Comm., 61st Leg. (Nev., Apr. 2, 1981)) (emphasis in original). Joint physical custody is the first alternative a court should consider when deciding custody. *See* NRS 125C.003(1). If such an arrangement is not in the best interest of child, the court may then order primary physical custody. *Id.* Joint physical custody is presumed not to be in a child's best interest in certain circumstances. NRS 125C.003(1)(a)-(c); *but see* NRS 125C.0025(1)(b) (providing joint physical custody remains the "preference" and "would be in the best interest of a minor child if . . . [a] parent has demonstrated, or has attempted to demonstrate but has had his

COURT OF APPEALS
OF
NEVADA

(O) 1947B

or her efforts frustrated by the other parent, an intent to establish a meaningful relationship with the minor child").

Primary physical custody "may encompass a wide array of circumstances." *Rivero*, 125 Nev. at 428, 216 P.3d at 226; *see also* NRS 125C.003(1)(a) (providing that an award of primary physical custody is appropriate when the district court determines that joint physical custody is not in the best interest of the child and specifying that joint physical custody is presumed not to be in the best interest of the child if "a parent is unable to adequately care for a minor child for at least 146 days of the year"). "The focus of primary physical custody is the child's residence." *Rivero*, 125 Nev. at 428, 216 P.3d at 226 (quoting Tenn. Code Ann. § 36-6-402(4) (2005), which defines "primary residential parent" as the parent with whom the child resides for more than 50 percent of the time). A primary physical custody arrangement is expansive enough to include parenting time arrangements where the nonprimary custodial parent has limited in-person parenting time. *Id.* (citing *Metz v. Metz*, 120 Nev. 786, 789, 101 P.3d 779, 781 (2004), wherein the court affirmed a primary custodial order where the nonprimary custodial parent had parenting time "every other weekend" and "custody of the child during the month of July").

However, neither the Nevada Legislature nor our supreme court has previously defined sole physical custody. Even so, the existence of sole physical custody as a parenting time arrangement is acknowledged in NRS 125C.0035. NRS 125C.0035(5) (explaining that clear and convincing evidence of domestic violence creates the presumption that "*sole* or joint physical custody" by the perpetrator is not in the best interest of the child (emphasis added)). Further, it is a parenting time arrangement ordered by Nevada's district courts and subject to appellate review. *See,*

*e.g.*, *Garver v. Garver*, No. 82471-COA, 2022 WL 1772546, at \*1 (Nev. Ct. App. May 27, 2022) (Order of Affirmance) (affirming an order granting sole physical custody that allowed only two virtual sessions per week with the noncustodial parent).

In a sole physical custody arrangement, the child "reside[s] with . . . one parent" yet is "subject to the power of the [district] court to order" parenting time for the noncustodial parent. *See* Cal. Fam. Code § 3007 (West 2004) (defining sole physical custody, cited by *Rivero*, 125 Nev. at 422, 216 P.3d at 222); *see also* Mass. Gen. Laws Ann. Ch. 208 § 31 (distinguishing "sole physical custody" from "shared physical custody"). Sole physical custody is distinct from primary physical custody. In a primary physical custody arrangement, a child spends most, but not all, of their time residing with one parent. Comparatively, in a sole physical custody arrangement, the child reasonably can be said to reside with only one parent. For example, with primary physical custody, a child may reside with both parents by spending most or some weekends living with the nonprimary-custodial parent. *See Rivero*, 125 Nev. at 425-26, 216 P.3d at 224. But this is not the type of parenting time arrangement our district courts consider when entering an order for sole physical custody.[11]

We now define sole physical custody as a custodial arrangement where the child resides with only one parent and the noncustodial parent's parenting time is restricted to no significant in-person parenting time. Therefore, when a district court enters an order that limits parenting time

---

[11]*See, e.g.*, *In re Parental Rights as to A.M.*, No. 81098-COA, 2020 WL 6955396, at \*1 (Nev. Ct. App. Nov. 25, 2020) (Order Granting Petition for Writ of Mandamus) (reviewing an order granting sole physical custody that did not award any parenting time to the noncustodial parent).

to restrictive supervised parenting time, virtual contact, phone calls, letters, texts, a very limited block of hours on a single day of the week, or a similarly restraining parenting time arrangement, it has entered an order for sole physical custody.

Because the noncustodial parent's care, custody, and control of their child is so severely restricted, sole physical custody orders implicate a parent's fundamental rights and policies in a manner manifestly distinct from orders for joint or primary physical custody. *See Blanco v. Blanco*, 129 Nev. 723, 731, 311 P.3d 1170, 1175 (2013) ("[C]hild custody decisions implicate due process rights because parents have a fundamental liberty interest in the care, custody, and control of their children."). While a district court does not terminate a parent's rights by entering a sole physical custody order, the severe restriction on the noncustodial parent's care, custody, and control of their child requires additional findings and procedure as compared to entry of a joint or primary physical custody order. *See* NRS 128.005(2)(a) (providing that the public policy of Nevada is to preserve and strengthen family life; thus, "[s]everance of the parent-child relationship is a matter of such importance" that it requires "judicial determination"); *cf.* NRS 128.105 (outlining specific findings a district court must make before terminating parental rights); NRS 128.160-.190 (providing the procedure for seeking a restoration of parental rights).

To protect a noncustodial parent's rights, judicial discretion is tempered by this state's policy of supporting "frequent associations and a continuing relationship" between parent and child after the parents' relationship with each other has ended. NRS 125C.001(1). Therefore, a district court risks abusing its discretion when it orders sole physical custody without sufficient cause or otherwise unnecessarily restricts and

COURT OF APPEALS
OF
NEVADA

(O) 1947B

threatens the parent-child relationship. *See, e.g., Davis*, 131 Nev. at 453-54, 352 P.3d at 1144-45 (concluding that the district court abused its discretion and violated Nevada's policy of frequent association by restricting the child from traveling out of the country to visit his father); *Mosley v. Figliuzzi*, 113 Nev. 51, 64, 930 P.2d 1110, 1118 (1997) (explaining that "courts should be striving to impose as little change from the intact two-parent family as possible after parents separate"), *overruled on other grounds by Castle v. Simmons*, 120 Nev. 98, 86 P.3d 1042 (2004); *Herzog v. Herzog*, No. 73160, 2018 WL 4781619, at *2 (Nev. Oct. 2, 2018) (Order Affirming in Part, Reversing in Part, and Remanding) (concluding that the district court abused its discretion by severely limiting parenting time to a degree that "could virtually destroy [a parent's] relationship with [her] child").

To avoid unnecessary restrictions on parental rights, a district court must only enter an order for sole physical custody if it first finds either that the noncustodial parent is unfit for the child to reside with,[12] or if it

___

[12]NRS 128.018 defines, in the context of termination of parental rights proceedings, an "'unfit parent' [as] any parent of a child who, by reason of the parent's fault or habit or conduct toward the child or other persons, fails to provide such child with proper care, guidance and support." When a parent has been determined by a district court to be unfit or neglectful, *see* NRS 128.106, this can be a basis for terminating parental rights. However, when deciding sole physical custody, some of the factors of NRS 128.106 are instructive or persuasive to the district court's findings of whether a parent is unfit for a child to reside with. For example, if a parent is found to be "unable to care for the immediate and continuing physical or psychological needs of the child for extended periods of time," engaged in abuse of the child, or excessively using alcohol or drugs so that the "parent [is] consistently unable to care for the child," then that parent may be unfit for the child to reside with. *See* NRS 128.106(a), (b), (d). These

makes specific findings and provides an adequate explanation as to the reasons why primary physical custody is not in the best interest of the child. *See Davis*, 131 Nev. at 452, 352 P.3d at 1143 (stating that the district court must make "specific findings and an adequate explanation of the reasons for the custody determination because they are crucial to enforce or modify a custody order and for appellate review" (quoting *Rivero*, 125 Nev. at 430, 216 P.3d at 227) (internal quotation marks omitted)); *see also Routten v. Routten*, 843 S.E.2d 154, 159 (N.C. 2020) (interpreting the "best interest of the child" to require additional written findings when "the court determines that one parent should not be awarded reasonable visitation"). As in *Davis*, these findings must be in writing, 131 Nev. at 452, 352 P.3d at 1143, and are separate and in addition to the best interest findings required under NRS 125C.0035(4) and our primary physical custody jurisprudence.

After making either of these findings supporting sole physical custody, the district court must then order the least restrictive parenting time arrangement possible that is within the child's best interest. *Cf.* NRS 125C.0035(1) (stating that in an action for physical custody of a child, "the sole consideration of the court is the best interest of the child"). When entering its custodial order, if a less restrictive parenting time arrangement is available, or proposed but rejected, the district court must provide an explanation as to how the best interest of the child is served by the greater restriction. *Cf. In re S.L.*, 134 Nev. at 494-97, 422 P.3d at 1257-59 (concluding that to preserve a parent's fundamental rights, a district court

---

examples are not intended to be either controlling or exhaustive, but instructive. *See Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 287-88, 449 P.3d 479, 485-86 (Ct. App. 2019) (using a similar statute to provide the definition of "material fact" in a statute where it was otherwise undefined).

must consider "the services offered to and the efforts made by the parents, and whether additional services would bring about lasting change"). For example, if a party, therapist, or guardian ad litem proposes supervised parenting time in lieu of an order for no physical contact with the child, and the district court declines to enter an order for supervised parenting time, it must explain in its written findings why supervised parenting time is not in the child's best interest.[13] *Cf.* NRS 432B.530(3)(b) (stating that when a child is placed in the physical custody of a nonparent, "the court shall set forth good cause why the child was placed other than with a parent"). We now turn to the situation at hand and apply these principles.

Here, the district court properly labeled its temporary order restricting Maggie's parenting time to reunification therapy and a six-hour visit on Sunday afternoons as sole physical custody. But this is not the case in the district court's post-hearing custody modification order wherein it expressly awarded "primary physical custody" to Jason yet limited Maggie's parenting time solely to cards, texts, and calls. *See Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 445, 874 P.2d 729, 733 (1994) (noting that appellate courts will generally construe a district court's order in terms of what it "actually *does*, not what it is called"). By so doing, the district court mislabeled the custodial order and inequitably restricted Maggie's parenting time so severely that she has less parenting time than other

---

[13]This level of detail is necessary to preserve the noncustodial parent's modification rights. *See Davis*, 131 Nev. at 452, 352 P.3d at 1143. A noncustodial parent, who has very limited or no care, custody, and control of their child, has a considerable evidentiary challenge to show "a substantial change in circumstances affecting the welfare of the child" and that the child's best interest will be served by the modification as compared to a joint, primary, or nonprimary custodial parent. *See Romano*, 138 Nev. at 9, 501 P.3d at 986.

parents in cases the supreme court has addressed who were incarcerated or residing at in-person rehabilitation programs.[14] The record contains no evidence to suggest that Maggie has any criminal history, any history of substance abuse, any history of domestic violence, or unfitness. Additionally, she is gainfully employed in public service as an educator, and she has actively been in treatment with a therapist covered by her insurance plan. Yet, by order of the district court, Maggie has been prohibited from exercising any in-person parenting time with H.R. for more than one year. We also note that the indirect effect of the district court's ruling has been to effectively terminate H.R.'s relationship with his half sibling in Maggie's care. *See* NRS 125C.0035(4)(i) (providing the best interest of a child may include the ability to maintain a relationship with a sibling).

Further, the district court's order put such a strangle on Maggie's parenting time with its reunification therapy requirements and imposition of significant financial liabilities, which tied any possible relief to her now limited financial resources, that it unreasonably restricted Maggie's fundamental rights concerning the custody of her child. *See Gordon*, 133 Nev. at 546, 402 P.3d at 674. There are few findings in the final order as to why such a restriction on Maggie's rights was warranted, even though such findings are required, especially when a district court ratchets a restriction on a parent's rights this tightly. *Cf.* NRS 128.005(1) ("The Legislature declares that the preservation and strengthening of family life is a part of the public policy of this State."); NRS 432B.330 and NRS 432B.390 (describing the circumstances under which a child is or may

---

[14]*See, e.g., Herzog*, No. 73160, 2018 WL 4781619, at *2; *Bohannon*, No. 69719, 2017 WL 1080066, at *1.

be in need of protection, none of which are present here, thereby allowing removal from the home by child protection authorities). And this was all done without the district court considering any less restrictive and financially feasible option, such as supervised parenting time.

In sum, the district court erred by: (1) failing to consider a less restrictive parenting time arrangement; (2) failing to adequately explain why the greater restriction was necessary;[15] (3) failing to make findings how true primary physical custody was not in H.R.'s best interest; and (4) implementing an almost unachievable plan with no ending, review, or even status check date, and accordingly has undermined Nevada's public policy, issued an order inconsistent with Nevada jurisprudence, and violated Maggie's parental rights. As a result, we conclude that the district court abused its discretion when it effectively awarded Jason sole physical custody of H.R. Thus, we reverse the parenting time allocation and direct the district court, on remand, to enter a parenting time order consistent with Nevada jurisprudence and this opinion.

*Delegation of substantive decision-making authority*

Maggie argues that it is impossible to satisfy Dr. Collins's treatment plan, as Maggie cannot afford to see her twice a month for an

---

[15]"Without an explanation of the reasons or bases for a district court's decision, meaningful appellate review, even a deferential one, is hampered because we are left to mere speculation." *Jitnan v. Oliver*, 127 Nev. 424, 433, 254 P.3d 623, 629 (2011) (explaining why deferential review does not mean no review or require adherence to the district court's decision); *see also In re Guardianship of B.A.A.R.*, 136 Nev. 494, 500, 474 P.3d 838, 844 (Ct. App. 2020) ("[B]ecause it is not clear that the district court would have reached the same conclusion . . . had it applied the correct [legal] standard[,] . . . we must reverse the district court's decision and remand for further proceedings.").

indefinite time and the therapeutic relationship is unrecoverable.[16] District courts may direct that an investigation be conducted for assistance in determining the appropriate custodial award. NRS 125C.0025(2). Yet district courts must have "the ultimate decision-making power regarding custody determinations, and that power cannot be delegated." *Bautista v. Picone*, 134 Nev. 334, 337, 419 P.3d 157, 159 (2018). Although some of its authority may be delegated "by appointing a third party to perform quasi-judicial duties," *Harrison v. Harrison*, 132 Nev. 564, 572, 376 P.3d 173, 178 (2016), the "decision-making authority [to be delegated] must be limited to nonsubstantive issues . . . and it cannot extend to modifying the underlying custody arrangement," including making significant changes to the timeshare for either parent, *Bautista*, 134 Nev. at 337, 419 P.3d at 159-60. This restriction applies to any delegation of a district court's decision-making power when deciding an appropriate custodial award, as well as the discretion to hear future, post-order modifications.

As outlined above, the district court ordered Dr. Collins to determine when Maggie and H.R. were ready to have any modification to the parenting time schedule. The determination of child custody is a substantive decision that rests solely within the district court's authority. *Id.* at 337, 419 P. 3d at 159; *see generally Romano*, 138 Nev. at 9, 501 P.3d at 986. Accordingly, we conclude that the district court abused its discretion by tethering any post-order increase of Maggie's parenting time to Dr. Collins's discretion.

---

[16]We note that Dr. Collins was called by Jason as an expert witness to testify for him and provide evidence unfavorable to Maggie, which undoubtedly further strained the therapeutic relationship beyond what has already been addressed.

*Specificity of final order*

Maggie argues that the lack of specificity in the district court's orders harmed her relationship with H.R., specifically noting the district court's final order incorporating by reference only its oral modification of "the no contact order of Dr. Collins." An order awarding parenting time must "[d]efine that right with sufficient particularity to ensure that the rights of the parties can be properly enforced and that the best interest of the child is achieved," and not use terms that are "susceptible to different interpretations by the parties." NRS 125C.010(1)(a), (2). Generally, a court's oral pronouncement from the bench is ineffective. *Nalder v. Eighth Judicial Dist. Court*, 136 Nev. 200, 208, 462 P.3d 677, 685 (2020) (quoting *Millen v. Eighth Judicial Dist. Court*, 122 Nev. 1245, 1251, 148 P.3d 694, 698 (2006)). Furthermore, a district court's written order must "specify the compliance details in unambiguous terms." *Cf. Div. of Child & Family Servs. v. Eighth Judicial Dist. Court*, 120 Nev. 445, 454-55, 92 P.3d 1239, 1245 (2004) (concluding that an order for contempt "must spell out the details of compliance in clear, specific and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed on [them]").

Here, the district court's final parenting time order incorporated, by reference only, its oral, mid-hearing direction to modify "the no contact order of Dr. Collins" by allowing Maggie to send cards to, text, or call H.R. The details of the district court's mid-hearing pronouncement were never reduced to writing, so there is little in the final order outlining the scope or facilitating enforceability of the "March 11, 2022, Order." Thus, there is no way to enforce the final order, especially as

COURT OF APPEALS
OF
NEVADA

(O) 1947B

26

to the involvement of law enforcement, and so it follows that the district court's final order is ineffective.

Therefore, on remand, we instruct the district court to enter an interim order consistent with Nevada jurisprudence, thus returning Maggie's parenting time to at a minimum what she could exercise following the emergency motion—at least weekly contact, even if supervised, with the goal of achieving "frequent associations and a continuing relationship." *See* NRS 125C.001(1). Thereafter, we direct the district court to retain its substantive decision-making authority and enter a final enforceable order that has the requisite level of specificity to comply with NRS 125C.010(1)(a), (2), and the principles announced in this opinion.

*On remand, this case must be reassigned to a different district court judge*

Maggie argues that the district court displayed bias against her by: (1) ignoring the evidence in the record about who was responsible for H.R.'s arrests; (2) ignoring H.R.'s personal therapist's recommendation that H.R. would benefit from physical time with Maggie; (3) questioning her excessively and rebuking her; and (4) predetermining the outcome before the close of the evidentiary hearing. Jason responds that the district court was not biased because it was Dr. Collins who recommended the ultimate outcome—no contact—and the parenting coordinator also recommended that contact be paused.

"[A] judge is presumed to be impartial . . . ." *Ybarra v. State*, 127 Nev. 47, 51, 247 P.3d 269, 272 (2011). However, a judge must "act at all times in a manner that promotes public confidence in the . . . impartiality of the judiciary." NCJC Rule 1.2. A judge shall perform duties without bias or prejudice, not use words or conduct manifesting bias, and require lawyers to refrain from such conduct. NCJC Rule 2.3(A)-(C). A judge who "entertains actual bias or prejudice for or against one of the

parties" must not preside over a proceeding. NRS 1.230(1). If a "judge's impartiality might reasonably be questioned," then that judge should be disqualified. NCJC Rule 2.11(A).

The test for judicial bias is a question of law, and the burden is on the party asserting bias to establish the factual basis. *Ybarra*, 127 Nev. at 51, 247 P.3d at 272. Ultimately, a judge should be disqualified if "a reasonable person, knowing all the facts, would harbor reasonable doubts about the [judge's] impartiality." *Id.* (alteration in original) (internal quotation marks omitted).

When evaluating if a case should be reassigned on remand, we consider the following factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Smith v. Mulvaney*, 827 F.2d 558, 562-63 (9th Cir. 1987); *see, e.g., Luong v. Eighth Judicial Dist. Court*, No. 84743-COA, 2022 WL 3755881, at *3 (Nev. Ct. App. Aug. 29, 2022) (Order Granting in Part and Denying in Part Petition for Writ of Mandamus and Denying Petition for Writ of Prohibition) (applying *Mulvaney* factors to reassign remanded family law case to a different district court judge).

From the record, it appears that the district court's impartiality can be reasonably questioned as early as the entry of the temporary order in March 2021 when it found that Maggie "obviously [cannot] parent [H.R.]" and "[t]here is something wrong . . . with the parent who cannot manage an

11-year-old." In the same order, the district court erroneously found that Maggie called the police on H.R., despite the record demonstrating that others had called. By the final prehearing conference, the district court said on the record that Maggie was "in a bad position." During the hearing, before Maggie presented any evidence, the district court stated, "I don't think there's a whole bunch more that . . . needs to be said." This court considers these instances—despite their occurrences during the performance of the judge's judicial duties—because these statements indicate a lack of impartiality. *See Canarelli v. Eighth Judicial Dist. Court*, 138 Nev. 104, 109, 506 P.3d 334, 339 (2022) (concluding that generally what a judge learns during the performance of his or her duties "does not warrant disqualification unless the judge forms an opinion that displays a deep-seated favoritism or antagonism that would make fair judgment impossible" (internal quotation marks omitted)).

There are also extrajudicial concerns in the record that implicate the district court's impartiality in this case, such as: (1) the district court expressed repeatedly on the record its highly favorable opinion of Dr. Collins, which was based on Dr. Collins's work in other cases the court was familiar with, and then forced Maggie to see only Dr. Collins for reunification therapy, despite Dr. Collins's concession that it was not a good match; (2) the district court considered pre-2017 evidence, including asking Maggie, before she gave her direct testimony, a series of questions related to incidents that took place before the stipulated custody order, even though the court restricted pre-2017 evidence at the outset of the hearing; (3) the district court stated that being a stepmother was more challenging than

being a biological mother;[17] and (4) the district court shared its opinion that H.R. was better behaved with his father because children listen better to men, in part because men have deeper voices and there is an underlying threat of "fisticuffs" should a child not listen to a man.

The above examples are nonexhaustive. Although one can reasonably argue that any statement made by a court during a lengthy proceeding can only be understood in context, here the record is replete with additional expressed views and findings that are either erroneous or based on evidence predating the 2017 order.[18] The district court's restrictive interlocutory orders almost certainly aided the devolution of H.R. and Maggie's relationship by prohibiting any form of contact between the two for months on end and by restricting physical contact for more than a year, and possibly to this day considering the requirements for reunification and improper delegation of authority as previously discussed. Further, the district court did so without considering a less restrictive alternative, such as supervised parenting time. By failing to consider a less restrictive alternative, the district court left Maggie only a single opportunity to potentially resume seeing her child—attend regular and frequent

---

[17]Alexandra, H.R's stepmother and Jason's wife, testified for Jason at the evidentiary hearing.

[18]The district court sustained several objections to the relevance of the parties offering pre-2017 evidence during the evidentiary hearing. But it did not sustain Maggie's objection to the relevance of the district court asking her several questions about pre-2017 events. *See* NRS 50.145(2) (a party may object to questions during the court's interrogation of a witness); *see also McMonigle v. McMonigle*, 110 Nev. 1407, 1408, 887 P.2d 742, 743 (1994) (providing that a party moving for a change in custody must show that circumstances have been substantially altered since the last custodial order), *overruled on other grounds by Castle*, 120 Nev. at 98, 86 P.3d at 1042.

individual sessions with Dr. Collins and achieve a sufficient level of progress, as determined by Dr. Collins, before joint reunification sessions with H.R. could begin. We note again that Dr. Collins, who admittedly was not a good therapeutic fit for Maggie, was not covered by Maggie's insurance, so Maggie could not afford to regularly attend appointments.

Given the district court's strong negative opinions of Maggie, as well as its shared on-the-record extrajudicial opinions, any duplication necessary by reassignment of this case to a different judge is not out of proportion to the requisite fairness demanded in child custody proceedings. Thus, on remand, we direct the chief judge or presiding judge to reassign this case to a different department to consider the issues related to Maggie's parenting time and the financial issues previously discussed and as discussed next.[19]

*The award of attorney fees and costs must be vacated*

The district court awarded Jason attorney fees and costs under both NRS 18.010 and NRS 125C.250. The district court also later cited EDCR 7.60(b)(3) as a legal basis for the award in its conclusions of law, but did not cite NRS 125C.250.[20] Rather, the district court's analysis focused

---

[19]Though we direct the assignment of this case on remand to a new district court judge, we do not agree with Maggie's argument that the proceedings were so infected by bias that an entirely new evidentiary hearing is required. Many of the difficult relationship issues between Maggie and H.R. predate the district court's first custody order in 2021, as evidenced by Maggie's own initial motion outlining her deteriorating relationship with H.R., as well as Zelensky's report on Maggie's emotional state.

[20]Following entry of the district court's order, sanctionable conduct in the family division is now addressed in EDCR 5.219, effective June 10, 2022. *See In re Amendment of Part I & V of the Rules of Practice for the Eighth*

on NRS 18.010, which allows a prevailing party to recover attorney fees but requires the district court to first find that "the claim . . . or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." NRS 18.010(2)(b). NRS 125C.250 allows for the recovery of reasonable attorney fees in child custody actions. EDCR 7.60(b)(3) allowed a district court in the family division to order sanctions, including an award of attorney fees, if a party, "without just cause," "multiplies the proceedings in a case as to increase costs unreasonably and vexatiously."

An award of attorney fees and costs is appropriately vacated when a portion of the underlying order is reversed. *See Halbrook v. Halbrook*, 114 Nev. 1455, 1460, 971 P.2d 1262, 1266 (1998) (reversing an award of attorney fees because the district court's order was reversed); *Iliescu v. Reg'l Transp. Comm'n of Washoe Cty.*, 138 Nev., Adv. Op. 72, 522 P.3d 453, 462 (Ct. App. 2022) (vacating an award of attorney fees because the underlying judgment was reversed in part and the prevailing party was no longer clear). As we reverse a portion of the district court's order in this case, we now also vacate the award of attorney fees and costs to Jason. However, as awards of attorney fees and costs in family law cases are frequently appealed to this court, and they will have to be addressed again upon remand, we review the bases cited by the district court for its order.

We begin with NRS 18.010. The general allowance for attorney fees to a prevailing party, provided under NRS 18.010(2)(a), is limited to

---

*Judicial Dist. Court*, ADKT 0590 (Order Amending Part I and V of the Rules of Practice for the Eighth Judicial District Court, Apr. 11, 2022). For clarity, we cite to EDCR 7.60(b)(3), which was the purported legal authority for sanctions at the time the district court entered its order.

civil actions where the party recovers a money judgment. *In re Execution of Search Warrants for: 12067 Oakland Hills, Las Vegas, Nev. 89141*, 134 Nev. 799, 799, 435 P.3d 672, 674 (Ct. App. 2018). Clearly there is no connection between a money judgment and a custody decision. Thus, an award for attorney fees to the prevailing party in a custodial action cannot be sustained under NRS 18.010(2)(a).

NRS 18.010(2)(b), however, permits the district court to award attorney fees to a prevailing party "when the court finds that the claim, counterclaim[,] . . . or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." The statute allows for liberal application because "[i]t is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions . . . in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses." *Id.* Under NRS 18.010(2)(b), "a claim is frivolous or groundless if there is no credible evidence to support it," *Rodriguez v. Primadonna Co.*, 125 Nev. 578, 588, 216 P.3d 793, 800 (2009), which requires the district court to consider the actual circumstances of the case, *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d 684, 688 (1995). Simply, in a custodial action, being a prevailing party alone is not enough for the district court to enter an award of attorney fees.

Here, the district court did not make findings that Maggie's claims or defenses were either unreasonable or meant to harass, as was required by the statute. Thus, the award of attorney fees was unsupportable under NRS 18.010(2)(b) based on the district court's sole finding that the legal basis for the award of fees was that Jason was the prevailing party. To the extent NRS 18.020 influenced the court's decision,

Court of Appeals
OF
Nevada

(O) 1947B

the award of costs is also unsupportable due to the lack of findings. *See* NRS 18.020(1)-(5) (stating costs must be allowed to the prevailing party in certain types of actions, none of which were found by the district court to be present in this case).

Turning to NRS 125C.250, which allows a district court to award reasonable attorney fees and costs in a custody or parenting time action, the district court did not make any findings under this statute, nor a sufficient overall determination as to the reasonableness of ordering Maggie to pay Jason over $11,000 in attorney fees and costs, considering it also ordered Maggie to pay for very expensive reunification services and individual sessions with Dr. Collins to have any parenting time with H.R. Adequate findings of reasonableness are necessary, as the evidence indicates Maggie is largely unable to afford these payments and further suggests Jason's conduct has been at least a contributing factor necessitating the reunification services. *Cf. Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (providing the framework for a district court to make findings on "the reasonable value of an attorney's services"); *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 806, 102 P.3d 41, 47 (2004) ("When considering an indigency application [in contempt proceedings], a trial judge must consider a party's complete financial picture, balancing income and assets against debts and liabilities, taking into account the cost of a party's basic needs and living expenses."); *Wright v. Osburn*, 114 Nev. 1367, 1370, 970 P.2d 1071, 1073 (1998) ("The disparity in [the parents'] income is also a factor to be considered in the award of attorney fees.").

Finally, the district court could not properly sanction Maggie under EDCR 7.60(b)(3) without notice and an opportunity to be heard. Nor

COURT OF APPEALS
OF
NEVADA

(O) 1947B

34

would it be proper without the court first finding that Maggie had multiplied the cost of litigation without just cause and did so unreasonably and vexatiously, which does not appear to be the case considering Maggie withdrew her motion to modify custody early in the proceedings. Undoubtedly, there has been significant litigation in this case, but duration or volume alone does not show that a litigant is per se unjust, unreasonable, or vexatious, and the court made no findings as to the same.[21]  Thus, the

---

[21]Also, as to the equity and reasonableness of either NRS 125C.250, EDCR 7.60(b)(3), or EDCR 5.219 as a basis for this award, the record is replete with questionable conduct from Jason's counsel.  As a limited example, in Jason's original opposition and countermotion, where the parties argue about the restrictive COVID-19 protocols, counsel for Jason opines in a footnote that "[t]he hope is that [H.R.] will contract the virus and then he will pass it on to Maggie."  In the same document, he calls Maggie offensive, sexist, and demeaning names.  *Cf.* NRCP 12(f) (allowing a district court to strike from a pleading "scandalous matter[s]").  Counsel also has taken liberties by inaccurately describing H.R.'s release from custody, including unjustly accusing Maggie of trying to get Jason killed via law enforcement.  *See* EDCR 5.218(a), (e) (defining "[c]ivility" in the family division includes *prohibiting* "[p]ersonal attacks" and "[a]ctions and presentations" that do not "serve the interest of candor, courtesy, and cooperation by demonstrating respect for the court and all opposing litigants and attorneys").

Should the district court award attorney fees to Jason on remand, in addition to what is discussed in the body of this opinion, it should consider when deciding the amount of fees whether Jason's counsel's language and behavior multiplied the proceedings and whether he presented positions that were "obviously frivolous, unnecessary, or unwarranted," thereby unnecessarily increasing the cost of litigation.  *See* EDCR 5.219(a); *see also* NRPC 3.1, 3.2(a), 3.4(e) (outlining a lawyer's ethical duty to raise "[m]eritorious [c]laims and [c]ontentions," to "make reasonable efforts to expedite litigation" and to be fair to the opposing party); *Creed of Professionalism and Civility*, State Bar of Nevada, https://nvbar.org/for-

district court's findings did not support an award of attorney fees and costs under NRS 18.010(2)(b), NRS 18.020(1)-(5), NRS 125C.250, or EDCR 7.60(b)(3); therefore, while we properly vacate the fees and costs here, we conclude that the award of fees and costs could also be reversed for legal error.[22]

## CONCLUSION

Sole physical custody is a custodial arrangement where the child resides with only one parent and the noncustodial parent's parenting time is restricted to no significant in-person parenting time. A district court entering an order for sole physical custody creates tension with a parent's fundamental rights, Nevada's public policy, and future modification rights. Thus, a district court must first find that either the noncustodial parent is unfit for the child to reside with, or it must make specific findings and provide an adequate explanation as to the reasons why primary physical custody is not in the best interest of the child. Afterwards, the district court must enter the least restrictive parenting time arrangement possible

---

lawyers/ethics-discipline/creed-of-professionalism-and-civility/ (last visited June 30, 2023).

We also note that EDCR 5.219, which is now the basis for sanctions in the family division, provides that "[s]anctions may be imposed against a party, *counsel*, or other person" without a litigant first moving for sanctions. (Emphasis added.) Thus, after notice and an opportunity to be heard, district courts in the family division may enter sanctions sua sponte "for unexcused intentional or negligent conduct," or for any of the reasons listed under the rule, including "[f]ailing or refusing to comply with" the rule prohibiting uncivil behavior. *See* EDCR 5.219(f); EDCR 5.218 ("Civility").

[22]Insofar as the parties have raised arguments that are not specifically addressed in this opinion, we have considered the same and conclude that they either do not present a basis for relief or need not be reached given the disposition of this appeal.

consistent with a child's best interest. Should it enter a more restrictive order, it must explain how the greater restriction is in the child's best interest. Moreover, it must retain its decision-making authority over future custodial modifications and parenting time allocations, as well as enter orders with sufficient specificity to allow enforcement. These steps are to ensure that when a district court enters an order for sole physical custody, it does so equitably and in accordance with Nevada's statutes and jurisprudence, thereby preserving the noncustodial parent's fundamental rights to the greatest degree possible.

The district court's order in this case did not meet these requirements. Accordingly, while we conclude that substantial evidence supports the district court's findings thereby allowing a modification of custody, we reverse as to the parenting time allocation and improper delegation of the district court's authority, vacate the award of attorney fees and costs, and remand the case for reassignment to a different district court judge for proceedings consistent with this opinion.

_____, C.J.
Gibbons

We concur:

_____, J.
Bulla

_____, J.
Westbrook