**141 Nev., Advance Opinion 9**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| CHEYENNE SOLDO-ALLESIO, Appellant, vs. KEVIN ALAN FERGUSON, Respondent. | No. 87657-COA |



FILED

FEB 13 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a child custody decree and post-judgment order denying a motion for relief pursuant to NRCP 52 and 59. Eighth Judicial District Court, Family Division, Clark County; Regina M. McConnell, Judge.

*Reversed and remanded.*

Law Offices of F. Peter James, Esq., and F. Peter James, Las Vegas, for Appellant.

Gastelum Law and Yadira Santana and Jennifer Setters, Las Vegas, for Respondent.

_____

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

*OPINION*

By the Court, BULLA, C.J.:

Domestic violence allegations must be carefully considered in child custody proceedings. The Nevada Supreme Court has recognized the

25-06948

"very real threat" domestic violence poses to a child's safety and well-being when determining custody between parents. *Castle v. Simmons*, 120 Nev. 98, 105, 86 P.3d 1042, 1047 (2004). Mindful of the harmful effects of domestic violence on child safety and child development, the Nevada Legislature established a rebuttable presumption against awarding physical custody to a perpetrator of domestic violence and included domestic violence as a best interest factor that must be considered when determining child custody. *See* NRS 125C.0035(5) (rebuttable presumption); NRS 135C.0035(4)(f) (best interest factor). In this opinion, we clarify that there are two separate evidentiary standards for the statutes at issue here: one when using domestic violence to apply a *rebuttable presumption* and the other when evaluating the role of domestic violence as a *best interest factor*. While clear and convincing evidence is the standard when applying the rebuttable presumption that can result in the denial of custody to a parent, preponderance of the evidence is the standard when evaluating domestic violence as a best interest factor in considering the custody arrangement that is in the best interest of the child. In this case, the district court erred in applying the clear-and-convincing-evidence standard to both statutes in its analysis and, therefore, did not fully evaluate the allegations of domestic violence as a best interest factor in determining custody.

We also take this opportunity to stress that a district court "must hear *all* information regarding domestic violence in order to determine the child's best interests." *Castle*, 120 Nev. at 105, 86 P.3d at 1047. In this case, the district court excluded *all* of appellant's exhibits, primarily for being untimely disclosed, despite many of the exhibits containing information regarding allegations of domestic violence known to both parties and despite the fact that certain exhibits had previously been

disclosed in motion work during the discovery period. This exclusion was not only in direct conflict with *Castle*, but it also acted as a discovery sanction under the applicable rules governing sanctions. *See* NRCP 16.205(g); NRCP 37(c).[1] As such, the district court was required to follow these rules to determine if excluding the trial exhibits was an appropriate sanction for the alleged failure to timely disclose them. The district court's failure to follow those requirements here, especially in light of the nature of some of the exhibits, is reversible error. Accordingly, we reverse the district court's custody decree and remand this matter for further proceedings.[2]

## FACTS AND PROCEDURAL HISTORY

Appellant Cheyenne Soldo-Allesio and respondent Kevin Alan Ferguson were never married but have one minor child together, E.F., who was approximately one year old when the underlying proceeding was commenced. The couple had a tumultuous relationship, separating and reconciling on multiple occasions, with their final separation occurring in February 2022. Soldo-Allesio then obtained an ex parte temporary protective order (TPO) against Ferguson in the Eighth Judicial District Court, based on allegations of domestic violence, which summarily granted

---

[1]We recognize that local rule EDCR 5.506(b) governs admissibility of documents at trial or an evidentiary proceeding, and EDCR 5.219 and EDCR 7.60 permit sanctions for lack of compliance. However, both NRCP 16.205 and NRCP 37(c) govern the appropriateness of imposing sanctions for the failure to timely disclose documents during discovery, and therefore, we focus on these rules. Further, "district court rules must be consistent with the Nevada Rules of Civil Procedure." *Nev. Power v. Flour Ill.*, 108 Nev. 638, 643 n.4, 837 P.2d 1354, 1358 n.4 (1992).

[2]Appellant challenged both the original and the amended child custody decree on appeal. As these decisions were essentially identical, we refer to them both as "the decree of custody" or "the custody decree."

her "temporary custody of the minor child." Thereafter, she and E.F. moved to Florida. The hearing master extended the TPO for six months after finding that domestic violence had either occurred or that there was a credible threat of it.

Meanwhile, on February 5, 2022, Ferguson filed a complaint for custody in the Eighth Judicial District Court Family Division, seeking primary physical custody of E.F. in Nevada. Two days later, Ferguson moved for primary physical custody of E.F. with Soldo-Allesio having parenting time.

In her answer and counterclaim, Soldo-Allesio sought primary physical custody in Florida. On the same day, she filed and served an opposition to Ferguson's motion and a countermotion for primary physical custody, in which she asserted that Ferguson had a long history of domestic violence and had committed several acts against her and one other woman. Soldo-Allesio also filed appendices of exhibits to support her accusations that included copies of the TPO and its extension, police reports, and photos of herself showing bruises and cuts, amongst other exhibits. The preceding items were all filed before the discovery deadline, such that the exhibits were available to Ferguson during the discovery period.

The district court did not resolve the parties' competing motions for primary physical custody but, instead, set the matter for trial and left the existing temporary custody order in place. Three days before the trial, Soldo-Allesio filed and served her list of trial exhibits on Ferguson. The list set forth 21 items, labeled exhibits A through U, including seven items that Soldo-Allesio had previously served in support of her countermotion for custody.

Certain exhibits Soldo-Allesio intended to proffer at trial related directly to her domestic violence allegations. These exhibits included screen-captured text messages and phone call logs, which, according to Soldo-Allesio, demonstrated that Ferguson harassed her. She also intended to introduce five police reports in which Ferguson reportedly committed domestic violence against her and one other woman. Photos depicting multiple cuts and bruises around Soldo-Allesio's left eye, right arm, and right leg were also included on Soldo-Allesio's list of trial exhibits, as she maintained that the depicted injuries were incurred during a June 2018 domestic violence incident in which Ferguson allegedly shoved her head against a wall. She also intended to introduce copies of the February 2022 TPO and its extension as evidence of a January 2022 domestic violence incident, where Ferguson had purportedly choked Soldo-Allesio and tried to sexually assault and kill her in front of E.F. She had previously disclosed four of the police reports, the photos, and the TPO and its extension in the exhibits supporting her countermotion for custody.

When Soldo-Allesio attempted to introduce her proposed exhibits into evidence at trial, Ferguson objected to their admission, arguing that he had not seen the exhibits prior to trial and challenged the authenticity of certain text messages and telephone logs.[3] Regarding the

---

[3]With respect to Ferguson's trial objection to the authenticity of certain exhibits, the record before us lacks sufficient information to address this issue because it is unclear whether the district court excluded exhibits solely based on untimeliness or also based on authenticity concerns. *Cf. Rodriguez v. State*, 128 Nev. 155, 162, 273 P.3d 845, 849 (2012) ("[W]hen there [is] an objection to admissibility of a text message . . . the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating

police reports that Soldo-Allesio sought to introduce, the district court also orally ruled that "police records are hearsay" and therefore did not "allow the admission of the police reports."[4] The district court ultimately excluded Soldo-Allesio's trial exhibits, primarily on the grounds of untimeliness. Therefore, the trial proceeded without Soldo-Allesio being able to introduce any of her exhibits into evidence, including the exhibits related to the alleged incidents of domestic violence.

Nevertheless, at trial, Soldo-Allesio testified about numerous instances of domestic violence with Ferguson, three of which we focus on in this opinion. The first occurred during a verbal altercation in a car, where Ferguson allegedly ripped Soldo-Allesio's shirt and pushed her out of the vehicle. The second occurred in June 2018 in Florida, where Ferguson allegedly shoved her into a concrete wall. The third incident occurred in January 2022 and led to the February 2022 TPO discussed above. When

---

evidence of authorship in order to authenticate the text message as a condition precedent to its admission."). We note that under NRCP 16.205(i) "[a]ny objection to the authenticity or genuineness of documents must be made in writing within 21 days of the date the receiving party receives them"; otherwise, they are presumed authentic and genuine and may not be excluded on those grounds.

[4]The Nevada Supreme Court has seemingly held that police reports are admissible under the regularly conducted activity or "business records" exception to the hearsay rule under NRS 51.135(1). *Miranda v. State*, 101 Nev. 562, 566, 707 P.2d 1121, 1124 (1985), *overruled on other grounds in Bejarano v. State*, 122 Nev 1066, 146 P.3d 265 (2006). Nevertheless, the business records exception does not, on its own, permit a party to introduce the contents of out-of-court statements made to police by witnesses about the events of the crime, which appears to be the purpose for which Soldo-Allesio sought to introduce them as opposed to the mere fact that a police report was made alleging domestic violence. *Id.*

questioned by the court, Ferguson acknowledged the existence of the TPO, but he could not explain why it was extended.

The district court subsequently entered a decree of custody awarding the parties alternating physical custody of E.F. every three months, such that the parties agree that they were essentially awarded joint physical custody. *See Bluestein v. Bluestein*, 131 Nev. 106, 112, 345 P.3d 1044, 1048 (2015) (explaining that a custodial arrangement in which each parent has physical custody of the child at least 40 percent of the time generally constitutes joint physical custody). However, the custody decree further provided that Ferguson "shall" have primary physical custody in Nevada when E.F. starts school in August 2026.

In the custody decree, the district court expressly considered the best interest factors set forth at NRS 125C.0035(4), finding that the majority of the nonneutral factors favored Ferguson, including, notably: his ability to provide E.F. with his own bedroom, obtain speech therapy for E.F., arrange daycare for E.F. when necessary, and overall meet E.F.'s needs. As relevant to this appeal, the court found the factor concerning domestic violence, NRS 125C.0035(4)(k), inapplicable because there was "no clear and convincing evidence that domestic violence ha[d] occurred." In reaching its decision, the court noted that Soldo-Allesio did not "follow through with pressing charges" after the June 2018 incident and did not present evidence to show that Ferguson was "charged or convicted of any . . . crime" following the January 2022 incident. The district court also relied on Ferguson's "credible" testimony that he was never convicted of any crimes involving domestic violence.

Soldo-Allesio moved for relief from the custody decree under NRCP 52 and NRCP 59, arguing that Ferguson had not explicitly denied

the allegations of domestic violence and that the court applied the incorrect evidentiary standard in analyzing domestic violence under the best interest factors. Moreover, Soldo-Allesio argued that any technical violations regarding service of her exhibit list and exhibits should not have resulted in the exclusion of all her exhibits, emphasizing that during discovery she served Ferguson with several of the trial exhibits as exhibits in support of her countermotion for custody. Soldo-Allesio requested a new trial with the reopening of discovery if the court did not amend its findings to support her allegations of domestic violence and award her primary custody.

After a hearing, the district court denied Soldo-Allesio's motion, concluding that Ferguson was credible at trial and that "there were items that it did not find [Soldo-Allesio] very credible in as they related to the best interest factors." The court also found there was not clear and convincing evidence of domestic violence to establish the rebuttable presumption under NRS 125C.0035(5) that sole or joint physical custody by the perpetrator of domestic violence would not be in the best interest of the child. Although raised as an issue by Soldo-Allesio when seeking a new trial, the court did not address whether it had applied the correct evidentiary standard when analyzing domestic violence as a best interest factor under NRS 125C.0035(4)(k). Instead, the district court emphasized that it found "no clear and convincing evidence of domestic violence" and that Soldo-Allesio had failed to press criminal charges against Ferguson.

On appeal, Soldo-Allesio challenges the district court's custody decree on several grounds. In this opinion, we primarily focus on two. First, whether the district court erred in applying the clear-and-convincing-evidence standard when evaluating domestic violence as a best interest factor. Second, whether the district court abused its discretion in excluding

all of Soldo-Allesio's trial exhibits. Because the district court applied the incorrect evidentiary standard when evaluating domestic violence as a best interest factor and failed to comply with NRCP 16.205(g) and NRCP 37(c) when the court excluded Soldo-Allesio's trial exhibits as a sanction, we reverse and remand.

*ANALYSIS*

*Standard of review*

Preliminarily, this court reviews a child custody order for abuse of discretion. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241 (2007); *Roe v. Roe*, 139 Nev., Adv. Op. 21, 535 P.3d 274, 284 (Ct. App. 2023). When making its determination, the district court must focus solely on the child's best interest. NRS 125C.0035(4); *Ellis*, 123 Nev. at 149, 161 P.3d at 242. NRS 125C.0035(4) sets forth a nonexclusive list of factors the district court shall consider when deciding the custody arrangement that is in a child's best interest. Although this court presumes that the district court properly exercised its discretion in determining the best interest of the child, *Culbertson v. Culbertson*, 91 Nev. 230, 233, 533 P.2d 768, 770 (1975), "deference is not owed to legal error, or to findings so conclusory they may mask legal error," *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015). But we will not set aside the district court's factual findings if they are "supported by substantial evidence, which is evidence that a reasonable person may accept as adequate to sustain a judgment." *Roe*, 139 Nev., Adv. Op. 21, 535 P.3d at 284. As relevant here, Nevada has adopted a rebuttable presumption against awarding a parent physical custody—whether joint, primary, or sole—where it has been established by clear and convincing

evidence that the parent committed domestic violence.[5] NRS 125C.003(1) (setting forth the rebuttable presumption); NRS 125C.0035(5) (same); NRS 125C.230(1) (same); *see also Roe*, 139 Nev., Adv. Op. 21, 535 P.3d at 286-89 (discussing the order in which the district court should consider awarding joint, primary, or sole physical custody and where the rebuttable presumption fits within that analysis).

*The district court applied an incorrect evidentiary standard when evaluating the best interest factors*

The first issue we consider is which evidentiary standard must be met to prove domestic violence for a district court to consider it when making its best interest determination. While NRS 125C.0035(4)(k)

---

[5]We have previously concluded, under NRS 125C.003(1), that "[j]oint physical custody is the first alternative a court should consider when deciding custody." *Roe*, 139 Nev., Adv. Op. 21, 535 P.3d at 286. "If such an arrangement is not in the best interest of [the] child, the court may then order primary physical custody." *Id.* (citing NRS 125C.003(1)). Among other things, "[a]n award of joint physical custody is presumed not to be in the best interest of the child if . . . there has been a determination by the court after an evidentiary hearing and finding by clear and convincing evidence that a parent has engaged in one or more acts of domestic violence." NRS 125C.003(1)(c). We take this opportunity to point out that accompanying statutes in NRS Chapter 125C—specifically, NRS 125C.0035(5) and NRS 125C.230(1)—only explicitly establish a rebuttable presumption against awarding the perpetrator of domestic violence "sole or joint physical custody" but do not specifically address a rebuttable presumption against primary custody. However, it logically follows from these statutes that a person who commits domestic violence should not be awarded primary physical custody if they are prohibited from receiving joint custody, which represents a lesser degree of custody. An alternative outcome would be absurd and would undermine the statutes' purpose to protect the child's well-being. *See Ramos v. State*, 137 Nev. 721, 722, 499 P.3d 1178, 1180 (2021) ("We will look beyond the statute's language only if that language . . . would lead to an absurd or unreasonable result.").

requires the court to consider "[w]hether either parent . . . has engaged in an act of domestic violence against . . . a parent of the child," it contains no language specifying an applicable evidentiary standard. By contrast, the statutory language regarding the domestic violence rebuttable presumption clearly states that, to apply the presumption, the domestic violence must be proven by clear and convincing evidence. *See* NRS 125C.0035(5) (requiring a "finding by clear and convincing evidence that either parent . . . has engaged in one or more acts of domestic violence" for the presumption to apply); NRS 125C.003(1)(c) (same); NRS 125C.230(1) (same). Soldo-Allesio contends that the preponderance-of-the-evidence standard should apply when the district court considers domestic violence as a best interest factor. Ferguson, on the other hand, argues that the clear-and-convincing-evidence standard should apply when considering domestic violence as either a best interest factor or when applying the rebuttable presumption. We agree with Soldo-Allesio.

Evaluating the child's best interest in determining custody is designed to place the child's welfare and developmental needs at the forefront of all child custody decisions, ensuring that the outcomes support their physical, emotional, and psychological well-being. *See Monahan v. Hogan*, 138 Nev. 58, 62, 507 P.3d 588, 592 (Ct. App. 2022) ("The 'best interest of the child' standard is a polestar of judicial decision making in family law matters."). Failure of the district court to properly consider any best interest factor and make specific findings constitutes an abuse of discretion. *Lewis v. Lewis*, 132 Nev. 453, 459-60, 373 P.3d 878, 882 (2016) ("In determining the best interest of the child, the court *shall* consider and set forth its specific findings concerning [the best interest factors].").

We emphasize that "preponderance of the evidence is still the default evidentiary standard in family law absent clear legislative intent to the contrary." *Monahan*, 138 Nev. at 69, 507 P.3d at 597 (internal quotation marks omitted). Thus, without clear legislative intent otherwise, we must conclude that the evidentiary standard that applies to the best interest factors, including the domestic violence factor, is a preponderance of the evidence. *See id.*; *see also Mack v. Ashlock*, 112 Nev. 1062, 1066, 921 P.2d 1258, 1261 (1996) (explaining that the preponderance-of-the-evidence standard generally governs civil matters, including child custody determinations). Ferguson points to no such clear legislative intent, and none is apparent from the language of the statute. *Cf.* NRS 125C.0035(5) (setting out a clear-and-convincing-evidence standard when courts consider whether to apply the rebuttable presumption regarding domestic violence); NRS 128.090(2) (requiring a petitioner to establish the facts by clear and convincing evidence before parental rights can be terminated).

That the district court must apply a higher evidentiary standard when considering whether to apply the rebuttable presumption regarding domestic violence is inconsequential when considering domestic violence as a best interest factor. *See Franklin v. Franklin*, No. 84334, 2024 WL 3085490, at *4 (Nev. June 20, 2024) (Order Affirming in Part, Reversing in Part, and Remanding) (concluding that domestic violence was established by a preponderance of the evidence when evaluating the domestic violence best interest factor while also determining that the clear-and-convincing-evidence standard for the rebuttable presumption was not met). Thus, even if a party cannot prove domestic violence by clear and convincing evidence for the district court to apply the rebuttable presumption, the court must still consider whether domestic violence has been proven by a

preponderance of the evidence in determining which custody arrangement is in the child's best interest. *See id.*; *see also Lewis*, 132 Nev. at 459-60, 373 P.3d at 882.

In this case, although the district court addressed Soldo-Allesio's allegations of domestic violence, it applied a clear-and-convincing evidentiary standard as opposed to the preponderance-of-the-evidence standard we have identified applies to the best interest factors. As such, the court failed to properly consider the allegations of domestic violence in its best interest analysis before making its custody award; this was legal error. *See Davis*, 131 Nev. at 450, 352 P.3d at 1142. This error is particularly concerning when it appears that substantial evidence may support a finding that E.F. was present during the January 2022 incident that resulted in the TPO being granted—especially in light of the deleterious effects of domestic violence on children as we have previously explained.[6] *See Roe*, 139 Nev., Adv. Op. 21, 535 P.3d at 284 (defining substantial evidence); *see also Nance v. Ferraro*, 134 Nev. 152, 159, 418 P.3d 679, 685 (Ct. App. 2018) (recognizing that, when district courts evaluate the child's best interest to determine physical custody, limitations on the use of evidence to establish domestic violence are generally inappropriate, as domestic violence is a critical consideration in the best interest analysis).

---

[6]Although the district court attempted to address this deficiency in its order denying post-judgment relief by stating that there was not clear and convincing evidence to support the rebuttable presumption, nothing in that order, the custody decree, or the transcripts from the relevant proceedings indicates that the district court evaluated domestic violence as a best interest factor under a preponderance-of-the-evidence standard.

Therefore, the district court abused its discretion because it failed to evaluate Soldo-Allesio's allegations of domestic violence in its best interest analysis under the correct evidentiary standard—preponderance of the evidence—before awarding custody. The failure to do so constitutes reversible error because we cannot conclude that the result would have been the same if the error had not occurred. *See Davis*, 131 Nev. at 450, 352 P.3d at 1142; *see also In re Guardianship of B.A.A.R.*, 136 Nev. 494, 500, 474 P.3d 838, 844 (Ct. App. 2020) ("[B]ecause it is not clear that the district court would have reached the same conclusion . . . had it applied the correct standard of proof, we must reverse the district court's decision and remand for further proceedings."); *Crosier v. Crosier*, No. 87206-COA, 2024 WL 4660838, at *4 (Nev. Ct. App. Oct. 31, 2024) (Order of Reversal and Remand) ("Because the district court's errors in this case were not harmless, we necessarily reverse the custody decree and post-decree order."); *cf.* NRCP 61 ("At every stage of the proceeding, the court must disregard all error and defects that do not affect any party's substantial rights.").

*The district court committed reversible error in excluding all of Soldo-Allesio's trial exhibits*

Two other evidentiary issues warrant our attention. First, the district court's orders implied that it viewed Soldo-Allesio's inability to prove that Ferguson had been convicted of domestic violence as a bar to it finding that domestic violence occurred for purposes of both the best interest factor and the rebuttable presumption regarding domestic violence. Second, the district court excluded all of Soldo-Allesio's trial exhibits, including those concerning domestic violence.

*The lack of a domestic violence conviction did not preclude a finding of domestic violence in this civil matter*

The custody decree stated that, because Ferguson credibly testified that he had not been convicted of any domestic violence charges, and because Soldo-Allesio failed to produce any contrary evidence, Soldo-Allesio failed to meet her burden for the court to consider her allegations of domestic violence under the best interest factors. And, in its post-judgment order, it similarly concluded that Soldo-Allesio did not meet her burden of proving that domestic violence occurred to warrant applying the rebuttable presumption in NRS 125C.0035(5). A conviction, however, is not required before the district court may find that a party has committed domestic violence in a civil matter. Indeed, a criminal conviction requires proof beyond a reasonable doubt and, as previously explained, NRS Chapter 125C does not. NRS 175.191; *see also Kuhn v. Danes*, 821 A.2d 335, 338 (Del. Fam. Ct. 2001) ("To fall within the definition of 'domestic violence,' one need not have been convicted of a criminal charge."); *cf. Myers v. Haskins*, 138 Nev. 553, 561-62, 513 P.3d 527, 535 (Ct. App. 2022) (concluding that a report from Oregon Child Protective Services finding that claims against a parent were unsubstantiated did not relieve the district court of its obligation to independently determine whether abuse or neglect occurred in a child custody matter). Soldo-Allesio's burden of establishing domestic violence for the purposes of the best interest factors as well as under the higher standard required by the rebuttable presumption could have been satisfied based on her testimony alone. *Cf. Franklin*, No. 84334, 2024 WL 3085490, at *2 ("This court has observed that the burden of providing clear and convince evidence can be satisfied by the victim's testimony alone."). The

district court's error in this regard clearly affected its analysis of both the domestic violence as a best interest factor and the rebuttable presumption.

*The district court erred by excluding exhibits, including those pertaining to domestic violence allegations, without a legal basis*

We now address the district court's decision to exclude all Soldo-Allesio's exhibits—effectively imposing a discovery sanction.[7] In excluding the exhibits, the district court expressed its concern that they were disclosed long after the discovery period had closed and that Ferguson would not have had time to review them and raise any objections prior to trial, even though certain exhibits had been provided in prior motion work.

We review a district court's decision to exclude evidence for an abuse of discretion, *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008), and will not disturb that decision without a finding of palpable abuse, *LVMPD v. Yeghiazarian*, 129 Nev. 760, 764-65, 312 P.3d 503, 507 (2013). However, when a court excludes trial exhibits as being untimely, the exclusion acts as a sanction.[8] *See, e.g.,*

---

[7]As to Soldo-Allesio's trial exhibits, just before trial, Ferguson moved and did not update his address with the district court. Soldo-Allesio, who claimed to be unaware of his new address, sent her trial exhibits to his prior address about one month before trial, but Ferguson did not receive them. The district court questioned her testimony regarding when she knew about the new address because the Sunday before trial she showed up at Ferguson's new residence and texted him. Although the resolution of this issue is unnecessary to our disposition, the district court may want to consider it on remand when analyzing the appropriateness of any sanction to be imposed.

[8]We note that, at oral argument, Soldo-Allesio's counsel stated his impression that the district court did not intend to impose a sanction. Nevertheless, we conclude that by excluding all of Soldo-Allesio's trial

*Lopez v. Lopez*, 139 Nev., Adv. Op. 54, 541 P.3d 117, 128-29 (Ct. App. 2023) (holding that the district court's decision excluding a purported prenuptial agreement not disclosed under NRCP 16.2 and as previously ordered by the court acted as a permissible discovery sanction); *cf. Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 265, 396 P.3d 783, 787 (2017) (clarifying that NRCP 37(c)(1), which establishes discovery sanctions, provides the appropriate analytical framework when a party fails to abide by NRCP 16.1's disclosure requirements). Before imposing sanctions for Soldo-Allesio's failure to timely disclose her trial exhibits, the district court was therefore required to apply the rules governing the imposition of sanctions. Specifically, in custody actions between unmarried persons, the district court must follow NRCP 16.205.

NRCP 16.205(d)(3)(E) requires a party to "provide a copy of every other document or exhibit, including summaries of other evidence, that a party expects to offer as evidence at trial in any manner." NRCP 16.205(f) requires a party to make "additional or amended disclosures whenever new or different information is discovered or revealed." And NRCP 16.205(g) mandates an award of sanctions for a party's failure to make required disclosures, including the exclusion of evidence, unless the violating party demonstrates "either good cause for the failure by a preponderance of the evidence or that the violating party would experience an undue hardship if the penalty were applied." We note that, within this rule, the available sanctions, which include the exclusion of evidence, are characterized as "discretionary" and "are encouraged for repeat or egregious

___

exhibits, the court effectively imposed a sanction for the reasons explained herein.

violations." NRCP 16.205(g)(2), (3). Further, in awarding sanctions under NRCP 16.205(g), the district court must impose "an appropriate sanction." And there must be other means to fully compensate the nonviolating party should the court decline to award an appropriate sanction or penalty. NRCP 16.205(g)(1).

Here, the record does not demonstrate that the district court followed NRCP 16.205(g) when determining that Soldo-Allesio's delay in disclosing trial exhibits warranted sanctions. Further, the district court failed to consider if there was a good cause exception for her delay in disclosing her trial exhibits, if she would experience an undue hardship if the exhibits were excluded, if exclusion was an appropriate sanction, or if an alternative penalty was available to compensate Ferguson for the delay in producing trial exhibits.

Overarching the specific rules pertaining to sanctions in custody matters is NRCP 37(c), which also governs the imposition of sanctions for the failure to timely disclose evidence. NRCP 37(c)(1)(C) provides in part as follows:

> **Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 16.1(a)(1), 16.2(d) or (e), *16.205(d) or (e)*, or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> . . .
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(1).

(Emphasis added.) Sanctions available under NRCP 37(b) include, as relevant here, "prohibiting the disobedient party from . . . introducing designated matters into evidence." NRCP 37(b)(1)(B).

However, to comply with the rule and impose an "appropriate sanction," the district court must engage in a thoughtful analysis as to whether the violating party's failure to timely disclose was either justified or harmless. *Cf. Eby v. Johnston Law Office, P.C.*, 138 Nev. 660, 672, 518 P.3d 517, 528 (Ct. App. 2022) (reversing where the district court failed to engage in the required analysis before ordering dismissal as an "appropriate sanction" for noncompliance under the language of NRCP 12(e)). This analysis was particularly necessary here because Ferguson knew of the TPO and its extension and had been served with some of Soldo-Allesio's exhibits well before trial, such that any alleged delay in disclosing these items as trial exhibits arguably would have been harmless. *See Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 492-93, 117 P.3d 219, 226-27 (2005) (concluding no palpable error occurred where the district court admitted a document that an objecting party challenged as being "trial by ambush" when that party had received the document during discovery); *see also Camp Bird Colo., Inc. v. Bd. of Cnty. Comm'rs*, 215 P.3d 1277, 1292 (Colo. App. 2009) (determining that no prejudice resulted from the late disclosure of trial exhibits that were produced to the other party at an earlier stage in the litigation, and thus exclusion was not warranted); *cf.* NRCP 61.

Given that the district court excluded all Soldo-Allesio's trial exhibits without setting forth the legal basis for its decision, we cannot determine whether the district court's sanction was appropriate. *See In re Guardianship of B.A.A.R.*, 136 Nev. at 500, 474 P.3d at 844. This is

particularly troubling in a custody case involving allegations of domestic violence where "all information" of such incidents must be considered.[9] *See Castle*, 120 Nev. at 105, 83 P.3d at 1047. Furthermore, as Soldo-Allesio argues, the district court's exclusion of all trial exhibits runs afoul of the supreme court's edict that child custody decisions should be based on the merits of the case rather than procedural technicalities. *See Blanco v. Blanco*, 129 Nev. 723, 730, 311 P.3d 1170, 1174 (2013) (stating that child custody issues "must be decided on their merits" when addressing a custody case involving case-concluding sanctions).

In this case, Soldo-Allesio's request for primary physical custody was centered on her domestic violence allegations, but the district court barred her from presenting any documentary and photographic evidence to support those allegations. Instead, Soldo-Allesio had to rely on her own testimony, which the court found lacked credibility due in large part to her failure to support her allegations of domestic violence by clear and convincing evidence, her failure to press criminal charges against Ferguson, and her failure to present evidence of a criminal conviction

---

[9]As to the TPO, we note that district courts may take judicial notice of another case when the closeness of the cases and particular circumstances warrant such notice. *Mack v. Est. of Mack*, 125 Nev. 80, 91-92, 206 P.3d 98, 106 (2009). Therefore, the district court likely could have taken judicial notice of the TPO proceedings when determining custody, as the cases were close, and the circumstances warranted it—namely the requirement that the district court consider all evidence of domestic violence when awarding custody. *See Castle*, 120 Nev. at 105, 83 P.3d at 1047; *see also, e.g., Phillips v. Phillips*, Nos. 82414 & 82693, 2022 WL 1302184, at *2 (Nev. Apr. 29, 2022) (Order of Affirmance) (concluding that, in a child custody proceeding, the district court properly took judicial notice of a TPO action concerning domestic violence).

against him. Therefore, the district court's exclusion of Soldo-Allesio's trial exhibits not only hindered Soldo-Allesio in proving her case at trial but also adversely impacted the court's ability to hear the parties' custody dispute on the merits by considering all relevant and otherwise admissible evidence of domestic violence before determining the appropriate custody arrangement for E.F. *See id.*

We are mindful that parties should timely disclose their trial exhibits and not engage in gamesmanship. However, in this case, without specific findings to support the sanction of exclusion based on the timing of the disclosure of Soldo-Allesio's trial exhibits, and because of the serious nature of domestic violence when considering custody, reversal is necessary. *Nance*, 134 Nev. at 159, 418 P.3d at 685 ("[T]o the extent that so limiting the evidence could prevent the district court from determining whether a party engaged in domestic violence in the course of considering what custody arrangement is in the child's best interest, such a result flies in the face of Nevada law requiring the district court to presume that it is in the child's best interest for an abuser not to have custody.").

*The district court's credibility findings do not provide a basis for affirming its decision*

We acknowledge that the district court also determined there were areas where it found Soldo-Allesio's credibility lacking. We do not reweigh credibility determinations made by the trial court. *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 366, 212 P.3d 1068, 1080 (2009) ("[C]redibilty determinations and the weighing of evidence are left to the trier of fact."). However, we cannot say that the district court would not have weighed the credibility of the parties' testimony differently had it applied the correct evidentiary standard for evaluating domestic violence as

a best interest factor, and had it recognized that, while a criminal conviction would have been important evidence, the lack of a conviction does not mean that domestic violence has not been established for purposes of determining custody. *See In re Guardianship of B.A.A.R.*, 136 Nev. at 500, 474 P.3d at 844; *see also Davis*, 131 Nev. at 452, 353 P.3d at 1143 ("Without [specific findings respecting the best interest factors], this court cannot say with any assurance that the custody determination was made for appropriate legal reasons."); *Ellis*, 123 Nev. at 149, 161 P.3d at 241-42 (providing that the district court's custody determination must be made for appropriate legal reasons). Thus, the district court's credibility findings do not provide a basis for affirming its custody determination.

## *CONCLUSION*

When evaluating domestic violence as a best interest factor under NRS 125C.0035(4)(k), the district court must apply the preponderance-of-the-evidence standard. Although we typically defer to the district court's discretion in custody matters, this deference does not extend to legal errors, including applying the incorrect and heightened clear-and-convincing standard to the best interest factor of domestic violence. *See Davis*, 131 Nev. at 450, 352 P.3d at 1142. As a result of this legal error, the district court abused its discretion because it failed to make adequate findings as to the domestic violence factor when considering the best interest of the child in determining custody. We further hold that the district court improperly excluded all Soldo-Allesio's trial exhibits, which imposed a severe sanction under both NRCP 16.205(g) and NRCP 37(c)(1), without first evaluating whether that sanction was appropriate and justified under the rules. On remand, the district court must apply the proper legal standards and make the necessary findings. In doing so, the

district court should also consider authenticity concerns of certain documents in light of NRCP 16.205(i), the admissibility of the TPO and its extension, and whether certain statements in the police reports may be admissible as nonhearsay, assuming the proper foundation for the police reports has been established.[10]  *See, e.g.,* NRS 51.035(2)(a) (allowing a statement to be admissible if it is inconsistent with the declarant's testimony at trial).

We therefore reverse the district court's custody decree and its order denying post-judgment relief and remand for further proceedings consistent with this opinion.

_____, C.J.
Bulla

We concur:

_____, J.
Gibbons

_____, J.
Westbrook

---

[10]We also note that at oral argument and in her opening brief, Soldo-Allesio argued that Ferguson implicitly admitted to the allegations of domestic violence by testifying that he had never committed domestic violence against E.F., but also not denying the allegations as they related to Soldo-Allesio.  On remand, the district court will need to resolve this ambiguity, and any other, when evaluating testimony concerning domestic violence under the correct evidentiary standard.